# Illinois Official Reports

## Appellate Court

---

**Warren County Soil & Water Conservation District v. Walters,**
**2014 IL App (3d) 130087**

---

| | |
|---|---|
| Appellate Court Caption | WARREN COUNTY SOIL AND WATER CONSERVATION DISTRICT, Plaintiff-Appellee, v. STEVE WALTERS, Individually, STEVE WALTERS LOGGING AND EXPORT, INC., and ROBERT O'DELL, d/b/a Robert O'Dell Logging, Defendants-Appellants. |
| District & No. | Third District<br>Docket No. 3-13-0087 |
| Filed | April 29, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Based on defendants' failure to act with due diligence in presenting a meritorious defense to plaintiff's action alleging that defendants cut timber that belonged to plaintiff, the trial court's denial of defendants' petition under section 2-1401 of the Code of Civil Procedure to vacate the default judgment entered for plaintiff was affirmed by the appellate court, especially when the record showed that although defendants retained counsel, they neglected to follow the progress of their own case for a substantial period of time during which their counsel did not respond to notices and did not present a known meritorious defense to the complaint, and despite defendants' implication in their petition to vacate that plaintiff's counsel acted improperly by not alerting defendants to their counsel's neglect, there was no indication that plaintiff or its counsel did anything improper. |
| Decision Under Review | Appeal from the Circuit Court of Warren County, No. 09-L-13; the Hon. Dwayne Morrison, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Christopher H. Sokn (argued), of Kingery Durree Wakeman & O'Donnell, Associates, of Peoria, for appellants.

Jeffrey W. DeJoode (argued), of March, McMillan, DeJoode & Duvall, P.C., of Macomb, for appellee.

Panel

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

## OPINION

¶ 1     On June 22, 2011, the trial court entered a default judgment against defendants, Steve Walters, Steve Walters Logging and Export, Inc., and Robert O'Dell, d/b/a Robert O'Dell Logging, for the alleged wrongful cutting of timber belonging to plaintiff, Warren County Soil and Water Conservation District. At the time of the 2011 default judgment, defendants were represented by counsel who failed to appear on their behalf. The trial court denied defendants' subsequent petition to vacate the default judgment, filed by new counsel pursuant to section 2-1401 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1401 (West 2012)), after finding defendants had not demonstrated due diligence in the original action due to the negligence of defendants' original trial counsel. On appeal, defendants assert the trial court should have exercised the equitable powers of the court, in the interests of justice, rather than attribute the lack of diligence of their original attorney to these defendants, contrary to well-established case law. We affirm.

¶ 2                               BACKGROUND

¶ 3     On October 29, 2009, plaintiff Warren County Soil and Water Conservation District filed a five-count complaint against defendants contending defendants wrongfully removed approximately 54 trees, worth $17,229.95, from plaintiff's property. In the respective counts, plaintiff asserted defendants: (1) violated the Wrongful Tree Cutting Act (740 ILCS 185/0.01 *et seq.* (West 2008)) warranting treble damages (740 ILCS 185/2 (West 2008)); (2) committed trespass upon plaintiff's property; (3) committed an act of conversion by withholding plaintiff's property; (4) owed plaintiff $17,229.95 based on the theory of *quantum meruit*; and (5) acted negligently by cutting trees on plaintiff's property without plaintiff's permission.

¶ 4     Before the filing of this complaint, Jeffrey Walters, Iowa counsel for Steve Walters Logging, Inc., attempted to settle the matter. When he was unsuccessful, Jeffrey located attorney Christopher Tichenor to represent defendants in the pending litigation. The record indicates defendants retained Tichenor in November 2010. Thereafter, on January 7, 2011, Tichenor filed a written appearance on behalf of all defendants.

¶ 5 However, Tichenor did not file an answer to the complaint or appear for the case management conference scheduled for April 18, 2011. On that date, the court entered an order instructing defendants to file an answer to the complaint by May 3, 2011. Tichenor did not file an answer on May 3, 2011, or thereafter, as ordered.

¶ 6 On May 16, 2011, plaintiff filed a motion for default judgment. Plaintiff provided Tichenor with a copy of the motion along with notice of the scheduled hearing on plaintiff's motion for default judgment set for June 22, 2011. Tichenor did not respond to the motion for default judgment within the next 30 days. Further, neither Tichenor nor his clients appeared before the court on June 22, 2011.

¶ 7 On June 22, 2011, the court granted plaintiff's motion for default judgment by allowing treble damages in the amount of $51,689.85 for count I, and $17,229.95 each for counts II through V.[1] On June 23, 2011, plaintiff's counsel sent a copy of the order of default judgment to Tichenor, by mail, addressed to his law office at 327 East Jackson Street, Macomb, Illinois.

¶ 8 One month later, on July 22, 2011, Tichenor filed a motion to set aside the default judgment pursuant to section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2008)), but did not request a hearing date with respect to this motion. On September 19, 2011, *plaintiff's* counsel scheduled Tichenor's motion to set aside the default judgment for a hearing before the court on October 24, 2011, one week after a scheduled case management conference set for October 17, 2011. Plaintiff's counsel sent notice of the motion hearing to Tichenor by mail.

¶ 9 On October 17, 2011, Tichenor failed to appear for a scheduled case management conference. The next week, Tichenor failed to appear before the court, on October 24, 2011, for the hearing on his motion to set aside the default judgment. On that date, the court denied defendants' motion to set aside the default judgment and entered a written order with findings on October 31, 2011.

¶ 10 The court's October 31, 2011, order found defendants failed to appear in person or by counsel at the October 17, 2011, case management conference, despite "being sent appropriate notice of said case management conference." The court also stated defendants failed to schedule their own motion to set aside the default judgment for a hearing and failed to appear at the hearing on defendants' motion to set aside the default judgment scheduled by plaintiff.

¶ 11 Plaintiff's attorney filed a "Citation to Discover Assets," on August 22, 2012. On August 29, 2012, the court entered a written order *sua sponte* removing Tichenor as defendants' attorney. The court's order, dated August 29, 2012, states "the Illinois Attorney Registration and Disciplinary Commission [(ARDC)] website indicate[d] that Christopher L. Tichenor [was] not authorized to practice law" on that date.[2]

¶ 12 The court's August 29, 2012, order also documented that Tichenor had not appeared on defendants' behalf for approximately one year, although he continued to be served with notices of the hearings in this action during that time. The court's order directed defendants to "retain

---

[1]A docket entry for this day indicated "Defendant Walters and O'Dell present by Atty. Tichenor" but the court's order stated "Defendants *** do not appear" and did not otherwise indicate an attorney appeared on their behalf.

[2]During oral argument, based on queries from the court regarding the status of Tichenor's law license in 2011, attorney Sokn recognized the ARDC website does not show Tichenor was disbarred, but indicates his license was not renewed for 2012.

other counsel or file with the clerk of the court, within 21 days after order herein, a "supplementary appearance" so that they could receive notices and "other papers" about the case. According to the record, the court sent a notice of this order to each individual defendant, including Steve Walters and Roger O'Dell.

¶ 13 On October 24, 2012, attorney Christopher Sokn, newly retained counsel representing all defendants, appeared on behalf of defendants by filing a petition for relief from judgment, pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2012)). Section IV of defendants' section 2-1401 petition alleged defendants were not responsible for the negligence of counsel and stated:

> "Tichenor totally failed in his sworn duties–he took a $2,000 retainer, did essentially no legitimate work, failed to notify his clients of any of the proceedings, disappeared with the retainer money, and was disbarred. When plaintiff called up the default judgment, it did so with full knowledge that Tichenor had disappeared, yet did not notify Petitioners or their Iowa counsel (despite Plaintiff having corresponded and negotiated with Petitioner's Iowa counsel for months prior)."

Defense counsel supported the section 2-1401 petition with affidavits from Steve Walters, Jeffrey Walters, and Roger O'Dell.

¶ 14 The affidavit of Steve Walters averred that, after defendants retained Tichenor, it was "[u]nbeknownst" to Steve that Tichenor failed to answer the complaint and failed to schedule or attend the hearing on his own motion to vacate the default judgment as arranged by plaintiff's counsel. Steve further averred he did not know of the default judgment until he received the August 29, 2012, order from the court removing Tichenor as their attorney of record. He also stated he had "since learned from the Illinois Supreme Court that Christopher Tichenor was disbarred and ha[d] no malpractice insurance coverage." An additional affidavit from Roger O'Dell contained similar statements regarding Tichenor's inaction and compromised law license.

¶ 15 The affidavit submitted by Jeffrey Walters also contained similar statements regarding Tichenor's inaction on defendants' case. Jeffrey averred he had "since learned from the Illinois Supreme Court that Christopher Tichenor ha[d] no law license and ha[d] no malpractice insurance coverage."

¶ 16 On January 10, 2013, plaintiff filed a response to defendants' section 2-1401 petition. In the response, plaintiff first asserted the general propositions of law that a litigant is bound by the mistakes of his counsel, a party has a duty to follow the progress of his own case, and a section 2-1401 petition cannot be used to relieve a party of his counsel's negligence. Plaintiff also argued the supreme court case of *People v. Vincent*, 226 Ill. 2d 1 (2007), which held that relief pursuant to section 2-1401 was no longer purely discretionary. Third, plaintiff asserted the case of *R.M. Lucas Co. v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102955, controlled in the case at bar as it also involved an instance where the appellate court affirmed the trial court's denial of a section 2-1401 petition challenging the dismissal of the party's complaint due to the negligence of that party's attorney. Defendants did not file a written response to this filing.

¶ 17 The parties appeared before the court on January 15, 2013, to argue defendants' section 2-1401 petition. Neither party presented evidence to the court. The court took the matter under advisement.

¶ 18     On January 22, 2013, the court issued a written order denying defendants' section 2-1401 petition to vacate the default judgment. The court found defendants established the existence of a meritorious defense and similarly established new counsel exercised due diligence after the entry of the default judgment by filing the section 2-1401 petition "well within the two year limit." However, the court found defendants did not demonstrate the necessary due diligence with respect to the presentation of the meritorious defense before the entry of the default judgment.

¶ 19     In a detailed and thoughtfully written order discussing recent case law, the court stated it "believe[d] that [it was] bound by the *Lucas* decision" since the facts of that case "could not be more similar" to the facts in the case at bar. The court also stated if it "had the ability to use discretion as was the law before *Vincent* and *Lucas* it clearly would have followed the [*Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690,] rationale and lessened the due diligence standard and granted the defendants' petition in the interest of justice." However, based on *Vincent* and *Lucas*, the court concluded, defendants had not demonstrated they were duly diligent prior to the entry of the default judgment.

¶ 20     Defendants appeal.

¶ 21                                    ANALYSIS

¶ 22     On appeal, defendants argue the trial court erroneously denied their section 2-1401 petition by refusing to relax the requirement of due diligence set out in existing case law in order to do justice based on equitable principles. Defendants assert this court should evaluate the trial court's ruling by applying an abuse of discretion standard.

¶ 23     In response, plaintiff contends a *de novo* standard of review applies in this case since the trial court decided the section 2-1401 petition, as requested, without an evidentiary hearing and based on the pleadings. Plaintiff asserts the trial court's ruling was correct as a matter of law.

¶ 24     In this case, defendants' section 2-1401 petition alleged they had a meritorious defense to the default judgment and it was unjust to allow the judgment to stand. It is well established that when a party claims to have an unlitigated, but meritorious, defense which would have prevented the entry of a judgment on the merits, the trial court must consider three issues before allowing a request to set aside the judgment. Specifically, the section 2-1401 petitioner must show: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the trial court in the original action; *and* (3) due diligence in the filing of the section 2-1401 petition to vacate the judgment. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986).

¶ 25     Our supreme court clarified that the appropriate standard of review to be applied concerning a trial court's ruling on the merits of a section 2-1401 petition, based only of the face of the petition and attached affidavits, is *de novo. Vincent*, 226 Ill. 2d at 18. The court recognized this holding departed from other decisions that relied on an erroneous belief that every request to vacate a judgment must be founded on the equitable power of the court to do justice. *Vincent*, 226 Ill. 2d at 15.

¶ 26     The court also clarified that the enactment of section 2-1401 of the Code created a specific statutory mechanism with five potential approaches to be employed by the court. Specifically, the trial court may: dismiss the petition; grant or deny the petition on the pleadings alone; or grant or deny the petition after conducting a hearing during which factual disputes are

- 5 -

resolved. *Vincent*, 226 Ill. 2d at 9. Here, the trial court decided the section 2-1401 petition without an evidentiary hearing and based solely on the pleadings. Consequently, contrary to defendants' position on appeal, we must review the trial court's decision based on the pleadings by applying a *de novo* standard of review. *Vincent*, 226 Ill. 2d at 18.

¶ 27    We begin our *de novo* review by considering the undisputed procedural history of this case contained in the pleadings. Plaintiff filed the lawsuit on October 29, 2009. Defendants retained attorney Tichenor in November of 2010. Tichenor entered his written appearance for defendants on January 7, 2011, but did not file an answer or appear for any scheduled court proceedings, and the court entered a default judgment against defendants on June 22, 2011. Tichenor filed a section 2-1301(e) motion to set aside the default judgment on July, 22, 2011, but similarly did not appear for the scheduled hearing on that motion on October 24, 2011. Consequently, the trial court allowed the default judgment to stand after denying Tichenor's section 2-1301(e) motion to set aside the default judgment on October 24, 2011. Tichenor took no action thereafter and one week later, the court issued a written decision formally denying Tichenor's motion to set aside the default judgment, based on section 2-1301(e), on October 31, 2011, due to his failure to appear.

¶ 28    It is also undisputed that defendants made no attempts to contact Tichenor with respect to the progress of their case after he entered his appearance on January 7, 2011. In fact, defendants discovered the existence of this default judgment, entered on June 22, 2011, for the first time when the *court* alerted defendants of the inaction of their retained counsel by removing Tichenor as their counsel of record on August 29, 2012, and notified defendants of the court's action.

¶ 29    At the onset, it must be emphasized that a section 2-1401 petition provides a unique remedy that does not operate "to shield a litigant from the consequences of *his own mistakes* or his counsel's negligence." (Emphasis added.) *Shapira v. Lutheran General Hospital*, 199 Ill. App. 3d 479, 483 (1990). Based on our *de novo* review of the pleadings in the case at bar, the section 2-1401 relief demonstrates that Tichenor not only abandoned his clients, but similarly his clients abandoned their own interest in the lawsuit and did not fulfill their duty to monitor the quality of Tichenor's legal representation from January 7, 2011, until August 29, 2012.

¶ 30    Contrary to the dissent, we do not intend to implicitly acknowledge a trial court may exercise equitable powers with respect to a section 2-1401 petition decided after *Vincent*. First, the *Vincent* court stated, "[w]hen the legislature abolished the writs in favor of today's statutory remedy, it became inaccurate to continue to view the relief in strictly equitable terms. Moreover, this court's application of civil practice rules and precedent factored out any notions about a trial court's 'discretion' to do justice." *Vincent*, 226 Ill. 2d at 16.

¶ 31    Next, we recognize other reviewing courts have decided equitable relief may remain an option for the trial court under special circumstances alleged in the context of a section 2-1401 petition decided after *Vincent*. However, assuming *arguendo*, that *Vincent* did not extinguish all equitable relief available to a section 2-1401 petition, we conclude the requested equitable relief is not warranted for these petitions because the case law provides that the party requesting the court to do justice must be free of contributory neglect and come forward with clean hands. See *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 61 (2005) (court reversed trial court's grant of defendant's section 2-1401 petition for relief from judgment where defendant did not exercise diligence in following the progress of his own case and did not otherwise present extraordinary circumstances, such as the lack of cooperation

- 6 -

between several attorneys, the death of the person required to answer interrogatories, or reliance on his insurance company, to support granting his section 2-1401 petition). In this case, defendants could not demonstrate their own *personal* due diligence and do not allege they were prevented from checking on Tichenor's progress by circumstances beyond their control. Thus, we conclude that since the pleadings reveal *neither* defendants *nor* Tichenor exercised due diligence in this case, defendants did not find themselves in a position to justify equitable or statutory relief. However, for purposes of this appeal, we express no opinion whether a trial court may utilize the equitable powers of the court with respect to a section 2-1401 petition in another case.

¶ 32    Plaintiff relies on the decision in *Lucas*, 2011 IL App (1st) 102955, which we consider, to provide a persuasive rationale supporting plaintiff's position on appeal that equity has no application in the case at bar. In *Lucas*, the court dismissed plaintiffs' complaint with prejudice on October 5, 2009, as a drastic sanction for the discovery violations attributable to the negligence of counsel alone. On November 9, 2009, counsel for plaintiffs filed a motion requesting the court to excuse his neglect and extend the date of discovery compliance to November 20, 2009, due to a medical emergency concerning plaintiffs' counsel's daughter. As in the case at bar, in *Lucas*, plaintiffs' counsel attempted to remedy the drastic action taken by the trial court against his clients. However, this remedy did not become available because, once again, the attorney in *Lucas* missed the court date to argue his motion on November 20, 2009.

¶ 33    Thereafter, newly retained counsel in *Lucas* filed a section 2-1401 petition hoping the trial court would forgive the negligence of prior counsel. The pleadings in *Lucas* reveal plaintiffs made repeated, but unsuccessful, attempts to personally contact their attorney from mid-October 2009 (shortly after the date of dismissal) to late-February 2010. Finally, in February 2010, plaintiffs asked another attorney to check the court file and discovered the court dismissed the complaint due to counsel's neglect of the discovery deadline four months earlier. Ultimately, like the case at bar, the court in *Lucas* heard oral arguments on the section 2-1401 petition and response and denied plaintiffs' section 2-1401 petition based on the pleadings determining that, after *Vincent*, it could no longer relax the due diligence requirement when the petitioner's previous "counsel ha[d] engaged in unanticipated and inexplicable misconduct." *Lucas*, 2011 IL App (1st) 102955, ¶ 24.

¶ 34    The facts in the case at bar are similar to, but even more extreme than, those present in *Lucas* with respect to the conduct of counsel's clients in the trial court. Here, defendants did not discover the negligence of Tichenor for nearly 14 months after the trial court entered a default judgment against them. Moreover, defendants, unlike the plaintiffs in *Lucas*, did not personally attempt to contact Tichenor at any point in time after Tichenor entered his appearance and completely failed to discover the negligence of Tichenor at all. Instead, the court itself alerted defendants of Tichenor's deficient performance by removing him from the case more than 19 months after he entered his appearance on January 7, 2011.

¶ 35    Based on the undisputed time line set out in pleadings here, it is clear defendants' own inaction or lack of diligence, with respect to discovering the ongoing and repeated inaction of their original retained counsel, contributed to the failure to present a meritorious defense, which defendants were well aware of, to the trial court. We are not unsympathetic to the allegations that Tichenor's father-in-law may have died. However, at a minimum, had defendants acted with greater diligence and ensured Tichenor appeared for the hearing on his timely section 2-1301(e) motion to set aside the default judgment resulting from the death of

- 7 -

his father-in-law, the trial court could have corrected the purported injustice shortly after the entry of the default judgment. However, Tichenor did not schedule his motion for hearing and failed to appear once the matter was scheduled by plaintiffs to be presented to the court on October 24, 2011. Even after Tichenor failed to appear on October 24, 2011, defendants did not discover this omission for another lengthy period of time.

¶ 36    Under these circumstances, we recognize the case law provides that a party will be held accountable for the negligence or mistakes of its counsel even when counsel's neglect remains unbeknownst to the clients who retained him for a significant period of time. See *Lucas*, 2011 IL App (1st) 102955. This same result is in order in the case now before us.

¶ 37    The case law provides that a party must follow the progress of its own case, rather than "merely assume that his counsel is doing everything which is necessary and proper in the conduct thereof." *Sakun v. Taffer*, 268 Ill. App. 3d 343, 353 (1994); see also *Kaput v. Hoey*, 124 Ill. 2d 370, 383 (1988). Clearly, it was not the trial court's obligation to monitor Tichenor's failure to protect his clients' best interests. In this case, for obvious reasons, the court elected, *sua sponte*, to remove Tichenor from the case after more than a year of neglect because defendants did not touch base with Tichenor and remained unaware of his inaction for more than a year.

¶ 38    We are not persuaded by the case law relied on by defendants in support of the contention that equitable principles demand justice, based on these facts, and the relaxation of a showing of defendants' due diligence is in order. Here, the trial court noted Tichenor had not appeared on defendants' behalf for approximately one year, although he continued to be served with notices of the hearings. Thus, Tichenor did not simply fail to calendar a single hearing, which occurred in *Rocha*, 2012 IL App (1st) 111690, cited by plaintiffs.

¶ 39    Based on our *de novo* review of the unique, but undisputed, facts contained in the pleadings with respect to the conduct of the defendants, we conclude defendants did not personally exercise due diligence to discover the long-standing negligence of their retained counsel and his repeated failure to present the known meritorious defense to the complaint for the trial court's consideration. This is not to say section 2-1401 relief would not be available had the pleadings demonstrated either Tichenor or counsel for plaintiffs acted fraudulently. While the section 2-1401 petition implied that counsel for plaintiff acted improperly by failing to alert defendants concerning Tichenor's extreme neglect, the trial court rejected this contention. In fact, the trial court concluded plaintiff's counsel acted properly in the trial court and could not have ethically reached out to defendants since they had retained counsel of record. Our review of the record reveals no improper conduct on the part of plaintiff or its attorney.

¶ 40    Secondly, defendants' section 2-1401 petition alleges, but does not demonstrate, Tichenor was disbarred or actually engaged in the unauthorized practice of law with respect to his clients. See *In re Marriage of Roepenack*, 2012 IL App (3d) 110198 (this court affirmed the grant of a section 2-1401 petition to vacate an agreed order where the agreement was procured by fraud and unconscionable conduct toward the *pro se* opponent and the court); see also *People v. Dunson*, 316 Ill. App. 3d 760 (2000) (the court vacated defendant's convictions as void and granted a new trial where the case was tried by an unlicensed assistant State's Attorney). Had defendants shown Tichenor was either disbarred or engaged in the unauthorized practice of law at the time the court entered the default judgment, the instant result may be different.

¶ 41    In short, based on the allegations contained in this section 2-1401 petition, focusing on the undiscovered negligence of original counsel for a significant amount of time, we conclude the trial court correctly denied the request for equitable relief and decided the section 2-1401 petition, based on the pleadings alone, as a matter of law.

¶ 42                                    CONCLUSION

¶ 43    The judgment of the circuit court of Warren County is affirmed.

¶ 44    Affirmed.

¶ 45    JUSTICE HOLDRIDGE, dissenting.

¶ 46    I dissent. I agree with the majority that the defendants did not act with diligence in presenting their defenses to the trial court. However, in my view, equitable considerations require us to vacate the default judgment entered in this case notwithstanding the defendants' lack of diligence. I would therefore reverse the trial court's judgment and remand with instructions to grant the defendants' section 2-1401 petition to vacate the default judgment.

¶ 47    At the outset, I note that the majority implicitly accepts the defendants' argument that our supreme court's decision in *People v. Vincent*, 226 Ill. 2d 1 (2007), does not eliminate a trial court's discretion to relax the due diligence requirement for equitable reasons under appropriate circumstances. I agree with this conclusion. Our appellate court decisions after *Vincent* are split on the issue. See, *e.g.*, *R.M. Lucas Co. v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102955 (interpreting *Vincent* as removing all discretion from circuit courts in section 2-1401 cases); but see, *e.g.*, *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 10 (noting that *Vincent* involved a jurisdictional claim that a trial court's judgment was void, limiting *Vincent* to its facts, and ruling that *Vincent* should not be read as limiting a trial court's equitable discretion to relax the diligence requirement where justice requires it to do so); *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 326-27 (2010) (same); *In re Marriage of Roepenack*, 2012 IL App (3d) 110198, ¶ 40 (ruling that "[w]hen justice and fairness require, a judgment may be vacated even though the requirement of due diligence had not been satisfied"). I believe that the latter cases are better reasoned. The plain language of section 2-1401 clearly indicates that the equitable relief that was formerly available under the old common law writs remains available under section 2-1401. See 735 ILCS 5/2-1401(a) (West 2008) ("[a]ll relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered").

¶ 48    Although the majority appears to agree that trial courts still have the discretion to relax the due diligence requirement for equitable reasons under appropriate circumstances, it finds that the facts of this case do not present such circumstances. Specifically, the majority notes that section 2-1401 does not shield a litigant from his own mistakes or his counsel's negligence, and that a party must follow the progress of his own case rather than merely assume that his counsel is doing everything necessary and proper in the conduct thereof. *Supra* ¶¶ 29, 37. It then faults the defendants for not following the progress of the case while it languished due to

Tichenor's inattention and for failing to discover the entry of the default judgment for nearly 14 months.

¶ 49    Although I agree that the defendants have not shown that they followed the progress of their case with diligence, I do not believe that this should decide the matter. Notwithstanding the general rule that section 2-1401 will not relieve a party of the consequences of his own neglect or his attorney's neglect, courts have relaxed the due diligence requirement for equitable reasons and granted section 2-1401 petitions despite the movant's lack of diligence in extraordinary circumstances where the party's counsel has abruptly and inexplicably abandoned the client or where there were reasons explaining the party's or its counsel's negligence. See, *e.g.*, *Cohen v. Wood Brothers Steel Stamping Co.*, 227 Ill. App. 3d 354, 360 (1991); *Yates v. Barnaby's of Northbrook*, 218 Ill. App. 3d 128 (1991); *Zee Jay, Inc. v. Illinois Insurance Guaranty Fund*, 194 Ill. App. 3d 1098 (1990).[3] Here, Tichenor totally abandoned the case with no notice to the defendants due (at least in part) to personal issues relating to the illness and death of his father-in-law. The defendants, who had diligently pursued settlement negotiations prior to the litigation, reasonably believed that they were being defended by Tichenor while any issues between Warren County and Biederbeck were being resolved, and that they did not learn of Tichenor's neglect until the circuit court removed him from the case.

¶ 50    Moreover, "a trial court ruling denying section 2-1401 relief can be vacated even in the absence of diligence where the defendant has a meritorious defense and actively seeks to vacate the judgment." *Rocha*, 2012 IL App (1st) 111690, ¶ 18; see also *Fiala v. Schulenberg*, 256 Ill. App. 3d 922, 929 (1993). "More important than the due diligence requirement is the requirement that substantial justice be achieved." *Rocha*, 2012 IL App (1st) 111690, ¶ 18. As our supreme court has ruled:

> "One of the guiding principles *** of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court, which should prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable. [Citations.] *** Because a section 2-1401 petition is addressed to equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and good conscience may require it a default judgment may be vacated even though the requirement of due diligence has not been satisfied." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 (1986).

Accordingly, where the defendant has meritorious defenses and promptly files a section 2-1401 petition to vacate a judgment, the petition may be granted in the interest of justice even without any showing that the defendant was diligent in presenting its defenses to the trial court. *Rocha*, 2012 IL App (1st) 111690, ¶ 18; see also *Fiala*, 256 Ill. App. 3d at 930. Contrary to the majority's suggestion, the diligence requirement may be relaxed under such circumstances even without a showing of fraud and without a showing that the movant's attorney had been

---

[3]In *R.M. Lucas*, the Fist District of our appellate court held that *Vincent* had effectively overruled *Cohen* because it interpreted *Vincent* as removing all equitable discretion from trial courts in section 2-1401 cases. As noted above, subsequent decisions of our appellate court, including a First District case (*Rocha*, 2012 IL App (1st) 111690, ¶ 10) and a Third District case (*Marriage of Roepenack*, 2012 IL App (3d) 110198, ¶ 40), have interpreted *Vincent* more narrowly. Accordingly, in my view, *Cohen*, *Yates*, *Zee Jay*, and other pre-*Vincent* cases affirming a trial court's exercise of discretion in section 2-1401 cases remain good law.

disbarred or was engaging in the unauthorized practice of law. See, *e.g.*, *Rocha*, 2012 IL App (1st) 111690.

¶ 51    Here, the trial court ruled that the defendants had meritorious defenses because the deeds and plat seemed to indicate that Biederbeck owned the property where the logging occurred and O'Dell took no action that would subject him to liability under the complaint. It also found that the defendants had been diligent in filing their section 2-1401 petition once they learned of the default judgment. Nevertheless, the trial court denied the defendants' petition because: (1) the defendants were not diligent in presenting their defenses to the circuit court (due, at least in large part, to Tichenor's neglect), and (2) the trial court concluded, wrongly, that *Vincent* deprived it of the discretion to relax the diligence requirement in the interest of justice. The court noted that, if it "had the ability to use discretion as was the law before *Vincent*," it "clearly" "would have lessened the due diligence standard and granted the defendants' petition in the interest of justice." Indeed, the court stated that "[i]t is difficult to think of a more unjust fact scenario to the defendants" than the facts presented in this case.

¶ 52    I agree that the default judgment in this case imposes a substantial injustice on the defendants. Even under a *de novo* standard of review, the defendants' defenses appear to have merit. The defendants presented affidavits (including the notarized deeds and plat) which were not effectively countered by the plaintiff.[4] Moreover, based on the arguments presented by the parties thus far, it seems that Walters Logging was a good faith purchaser, and there does not appear to be any basis for imposing liability against Steve Walters or O'Dell. Accordingly, it appears that the plaintiff has obtained a judgment against the defendants in excess of $68,000 for the removal of trees from land that the plaintiff apparently does not own. In my view, the enforcement of this judgment would be "unfair, unjust, [and] unconscionable." *Airoom*, 114 Ill. 2d at 225. At a minimum, the defendants should have an opportunity to test the plaintiff's claims through motion practice or at trial. Accordingly, I would reverse and remand with directions to grant the defendants' section 2-1401 petition to vacate the default judgment.

---

[4]The "legal description" that the plaintiff presented to refute the notarized deeds and plat presented by the defendants was prepared on a word processor and contained no official seals, signatures, notarization, file stamps, or any indicia of recording or authenticity. When later given the opportunity to present affidavits or further documents during the section 2-1401 hearing, the plaintiff provided none.