# Illinois Official Reports

## Supreme Court

---

### *Warren County Soil & Water Conservation District v. Walters*,
### 2015 IL 117783

---

| | |
|---|---|
| Caption in Supreme Court: | WARREN COUNTY SOIL AND WATER CONSERVATION DISTRICT, Appellee, v. STEVE M. WALTERS *et al.*, Appellants. |
| Docket No. | 117783 |
| Filed | May 21, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Warren County, the Hon. Dwayne Morrison, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | Christopher H. Sokn, of Kingery Durree Wakeman & O'Donnell, Assoc., of Peoria, for appellants.<br><br>Jeffrey W. DeJoode, of March, McMillan, DeJoode & Duvall P.C., of Macomb, for appellee. |

Justices                      JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      This appeal requires us to determine whether our decision in *People v. Vincent*, 226 Ill. 2d 1, 15-16 (2007), should be interpreted as eliminating the circuit court's discretion to consider equity when ruling on a petition seeking relief from a final judgment or order under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). Here, the circuit court of Warren County denied a section 2-1401 petition seeking to vacate a default judgment. Despite expressing its opinion that equity favored vacating the judgment, the court believed it was constrained by authority interpreting *Vincent* to eliminate equitable considerations in section 2-1401 proceedings. A majority of the appellate court affirmed. 2014 IL App (3d) 130087, ¶ 43.

¶ 2      For the reasons that follow, we reverse the judgments of the appellate court and the circuit court. We remand the cause to the circuit court for further proceedings consistent with this opinion.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant Steve M. Walters is a buyer of timber in Illinois who operates defendant Steve Walters Logging & Export, Inc., an Iowa corporation. In 2005, Walters executed a contract with Martha Biederbeck to log about 54 trees from property she owned in Warren County, Illinois, for approximately $16,000. At the time, Biederbeck was a resident of the State of Washington. Defendant Robert O'Dell is a resident of Ellsworth, Iowa, who operates Robert O'Dell Logging, a sole proprietorship. Robert O'Dell Logging hauled a load of harvested trees from Biederbeck's property to a local sawmill. Although not entirely clear in the record, it appears that at some point after defendants harvested the trees, plaintiff, Warren County Soil and Water Conservation District, came to believe that plaintiff owned the property where the trees were harvested under the Biederbeck contract.

¶ 5      Consequently, on October 29, 2009, plaintiff filed a five-count complaint in the circuit court of Warren County against defendants, individually, their businesses, and Biederbeck.[1] Plaintiff valued the trees removed from the property at over $17,000. In the complaint, plaintiff alleged that defendants: (1) violated the Wrongful Tree Cutting Act (740 ILCS 185/0.01 *et seq.* (West 2008)), entitling plaintiff to treble damages exceeding $51,000; (2) committed trespass upon plaintiff's property; (3) committed an act of conversion by withholding plaintiff's property; (4) owed plaintiff over $17,000 based on the theory of *quantum meruit*; and (5) acted negligently by cutting trees on plaintiff's property without plaintiff's permission.

---

[1]Although Biederbeck was named as a defendant in plaintiff's complaint, she is not a party to this appeal because she is not subject to the default judgment at issue here. Thus, for purposes of this appeal, we do not refer to Biederbeck as a defendant.

¶ 6        On August 25, 2010, Biederbeck, represented by counsel Richard Whitman, answered plaintiff's complaint. Biederbeck admitted that she entered into a logging contract with Walters that authorized him to harvest trees from her Illinois property. Biederbeck denied knowledge of whether defendants removed trees from plaintiff's property. Biederbeck also denied knowledge of defendants trespassing on plaintiff's property during their logging activities. Thus, Biederbeck denied knowledge of whether she was paid for trees that were improperly harvested from plaintiff's property.

¶ 7        On January 7, 2011, attorney Christopher L. Tichenor filed a written appearance on behalf of defendants. Tichenor, however, did not file an answer to plaintiff's complaint.

¶ 8        At a scheduled case management conference on April 18, 2011, plaintiff, Biederbeck, and their respective counsel appeared. Neither defendants nor Tichenor appeared. Following the conference, the circuit court entered an order directing defendants to answer plaintiff's complaint by May 3, 2011. Defendants did not timely answer plaintiff's complaint.

¶ 9        On May 16, 2011, plaintiff filed a motion for default judgment against defendants, noting they had not answered the complaint and had not filed any pleadings. Defendants did not timely respond to plaintiff's motion for default judgment.

¶ 10        At the June 22, 2011, hearing on plaintiff's motion for default judgment, defendants and Tichenor again failed to appear. Following the hearing, the court granted plaintiff's motion for default judgment against defendants. The court awarded plaintiff damages in the amount of $51,689.85 for count I and $17,229.95 for counts II through V.

¶ 11        A month later, on July 22, 2011, defendants, through their attorney Tichenor, filed a motion to set aside the default judgment under section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2008)). In that motion, defendants represented that after the complaint was filed in October 2009 until November 2010, they were represented by an Iowa attorney, Jeffrey Walters, who attempted to negotiate a settlement among all the parties. Defendants alleged that all parties negotiated in good faith and attempted to resolve the controversy. Defendants obtained Illinois counsel, Tichenor, after the settlement negotiations failed. Defendants represented that Tichenor sent plaintiff a draft answer to the complaint but failed to get the proper signatures. Explaining the subsequent delay and failures to appear, defendants stated that a member of Tichenor's family was terminally ill and passed away in May 2011. During this time, Tichenor spent "an extensive amount of time away from his office." Defendants requested that the court enter an order vacating the default judgment but did not request a hearing on the matter.

¶ 12        On October 3, 2011, plaintiff filed a response to defendants' motion to set aside the default judgment. Plaintiff generally admitted defendants' allegations about the initial settlement negotiations and also admitted that Tichenor sent a copy of an unsigned draft answer to plaintiff's counsel. Plaintiff, however, did not have sufficient knowledge to admit or deny the allegations pertaining to defendants' explanations for their delay and failure to appear. Plaintiff additionally observed that defendants had not yet provided a signed answer to the complaint or complied with the court's prior discovery orders.

¶ 13        On October 17, 2011, Tichenor and defendants failed to appear for a scheduled case management conference. On October 24, 2011, Tichenor and defendants failed to appear for the scheduled hearing on their motion to vacate the default judgment.

¶ 14     On October 31, 2011, the circuit court entered an order denying defendants' motion to vacate the default judgment. In its order, the court found that defendants failed to set the motion to vacate for a hearing, failed to cooperate with the other parties, failed to appear at a duly noticed hearing on the motion, and failed to appear either in person or by counsel at the case management conference. The court further found that plaintiff's counsel had made a good faith attempt to locate and notify defendants of progress in the litigation.

¶ 15     Almost a year later, on August 22, 2012, plaintiff filed a citation to discover assets. On August 29, 2012, the circuit court entered a *sua sponte* order removing Tichenor as defendants' attorney. The order indicated that "the Illinois Attorney Registration and Disciplinary Commission website indicates that Christopher L. Tichenor is not authorized to practice law." The order documented that Tichenor had not withdrawn from defendants' case and repeatedly failed to appear in court on behalf of defendants for approximately one year. The court also directed defendants to obtain new counsel. The court sent notice to the parties' respective counsel and to each individually named defendant.

¶ 16     On September 20, 2012, the circuit court issued a turnover order to the Illinois Department of Natural Resources for a $25,000 bond executed on behalf of defendant Steve Walters Logging & Export, Inc., to be applied to the default judgment against defendants.

¶ 17     On October 24, 2012, defendants, represented by their new counsel Christopher Sokn, filed a petition for relief from judgment under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2012)). In the petition, defendants blamed the delays on Tichenor, describing him as having "totally failed in his sworn duties." Defendants alleged that Tichenor received a $2,000 retainer but essentially performed no substantive work. Tichenor never appeared to defend the case, allowed a default judgment to be entered against defendants, and failed to contest the default judgment. Defendants observed that all of the notices were sent to Tichenor's business address.

¶ 18     Defendants believed that Tichenor was monitoring their case while plaintiff and Biederbeck litigated a title claim over the contested property. Defendants did not learn that Tichenor had neglected their case, or that a default judgment was entered against them, until defendants received the court's order notifying them that Tichenor was removed. Defendants also repeatedly stated that Tichenor was disbarred from the practice of law.[2]

¶ 19     On the merits, defendants argued that justice, equity, and fairness required the default judgment be vacated because their defenses were absolute. Defendants contended that they were *bona fide* purchasers for value of the logging rights from Biederbeck. In addition, defendants asserted that all of the relevant evidence demonstrated that Biederbeck owned the property where defendant logged the trees. Defendants' petition was supported by the affidavits of Steve Walters, Jeffrey Walters, and Roger O'Dell, the Biederbeck logging contract, plat book excerpts, property deeds, and a letter from Jeffrey Walters to plaintiff's attorney describing settlement negotiations.

¶ 20     On January 10, 2013, plaintiff filed a response to defendants' section 2-1401 petition. Plaintiff argued that a litigant is bound by the mistakes of their counsel and section 2-1401 is

---

[2]The Illinois Attorney Registration and Disciplinary Commission website has no discipline record and no pending investigations for Christopher L. Tichenor. It also indicates that Tichenor was last registered to practice law in Illinois in 2011.

not intended to relieve a party of their counsel's negligence. Citing *Vincent*, plaintiff argued that relief in a section 2-1401 petition is no longer purely discretionary in the circuit court. In addition, citing *R.M. Lucas Co. v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102955, plaintiff contended that *Vincent* eliminated the circuit court's discretion to relax the due diligence standards or otherwise relieve a litigant of the consequences that arise from his counsel's mistake or negligence.

¶ 21 On January 22, 2013, the circuit court issued an order denying defendants' section 2-1401 petition, including an extensive analysis of the parties' arguments. The court also noted that the parties did not submit additional "formal evidence," but did present argument on the motion. Ultimately, the court found that defendants presented meritorious defenses. Reviewing the attached supporting materials, the court found that "Biederbeck appears to own the property logged." The court also found that defendants exercised due diligence in filing their section 2-1401 petition. The court, however, declined to find that defendants exercised due diligence in raising their meritorious defenses.

¶ 22 Relevant to this appeal, the court observed that this court's decision in *Vincent* had resulted in a split of authority on the issue of whether a trial court may exercise its discretion to relax the applicable due diligence requirements in section 2-1401 proceedings for equitable reasons. The court felt obligated to follow the *R.M. Lucas* decision interpreting *Vincent* to eliminate equitable considerations in section 2-1401 petitions. Expressing its reluctance to deny the petition, the court added that "[i]f the court had the ability to use discretion as was the law before *Vincent*," it would have "lessened the due diligence standard" and granted defendants' section 2-1401 petition in the interest of justice. The court opined that "[i]t is difficult to think of a more unjust fact scenario to the defendants." Nonetheless, consistent with its opinion that *Vincent* eliminated equitable considerations in section 2-1401 proceedings, the court denied defendants' petition.

¶ 23 On direct appeal, a majority of the appellate court affirmed. Generally, the majority agreed with the circuit court's interpretation of *Vincent* and reliance on *R.M. Lucas*. 2014 IL App (3d) 130087, ¶¶ 30-34. The dissenting justice argued that the default judgment against defendants should be vacated for equitable reasons and that equitable relief in section 2-1401 petitions was still permissible after *Vincent*. 2014 IL App (3d) 130087, ¶¶ 46-47 (Holdridge, J., dissenting).

¶ 24 This court allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 25                                                     II. ANALYSIS

¶ 26 On appeal, defendants argue that the appellate court improperly expanded this court's decision in *People v. Vincent*, 226 Ill. 2d 1 (2007), to eliminate the circuit court's discretion to consider equity when ruling on a section 2-1401 petition. Defendants note that decisions of the Illinois Appellate Court disagree on the proper interpretation of *Vincent*. The appellate court's decision in *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, is representative of a decision that interprets *Vincent* as limited to the specific legal issue in that case. In contrast, the appellate court's decision in *R.M. Lucas Co. v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102955, is representative of a decision that interprets *Vincent* as eliminating the circuit court's discretion to consider equity in section 2-1401 proceedings and requiring *de novo* review of section 2-1401 petitions.

¶ 27    On the merits of their section 2-1401 petition, defendants argue that they have established meritorious defenses that justify vacating the default judgment and that the circuit court's ruling should be reviewed under the abuse of discretion standard. Even if defendants were not diligent in presenting their defense, they contend the default judgment is manifestly unjust and unconscionable under the facts of this case. Specifically, defendants assert that the evidence demonstrates plaintiffs do not own the property and are not entitled to compensation for the timber defendants removed from the property. Defendants also contend they are protected as *bona fide* purchasers for the value of the timber.

¶ 28    Plaintiff responds that the appellate court properly interpreted *Vincent* when it concluded that section 2-1401 proceedings are no longer "purely discretionary" and that *de novo* review applies to this case. Plaintiff argues that *Vincent* prohibits the circuit court from considering equity to relax the requisite due diligence standards. On the merits of defendants' section 2-1401 petition, plaintiff argues that defendants are bound by the mistakes and actions of their counsel and were responsible for following the progress of their case. Moreover, plaintiff contends that the defendants cannot establish the requisite due diligence requirements and do not have a meritorious defense. Plaintiff notes that defendants admitted that plaintiff owns the property at issue by failing to answer the complaint. Plaintiff also suggests that defendants have an adequate remedy because they can file a cross-claim against Biederbeck.

¶ 29    As demonstrated by the parties' arguments, this appeal first requires this court to consider our decision in *Vincent*. In *Vincent*, we reviewed a circuit court's *sua sponte* dismissal of a section 2-1401 petition filed by a criminal defendant challenging his extended-term sentence as void. Relevant to this appeal, *Vincent* rejected an abuse of discretion standard in favor of *de novo* review when a section 2-1401 petition is dismissed on the pleadings. *Vincent*, 226 Ill. 2d at 15-16. Explaining our conclusion, we stated that section 2-1401 proceedings should no longer be considered "strictly equitable" or "purely discretionary." *Vincent*, 226 Ill. 2d at 16.

¶ 30    Focusing on those statements from *Vincent*, the lower courts here determined that *Vincent* marked a departure from a long line of this court's holdings that the circuit court's ruling on a section 2-1401 petition is reviewed for an abuse of discretion and that the proceedings are firmly grounded in equitable considerations. See *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 95 (2006) (acknowledging the "long line of cases from this court" applying the abuse of discretion standard to the disposition of a section 2-1401 petition); see also *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 (1986) ("One of the guiding principles *** in the administration of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court ***."). As defendants correctly observe, however, our appellate court does not agree on the proper interpretation of *Vincent*. See *supra* ¶ 26.

¶ 31    It is undisputed that section 2-1401 of the Code represents a comprehensive statutory procedure authorizing a trial court to vacate or modify a final order or judgment in civil and criminal proceedings. *Vincent*, 226 Ill. 2d at 7; *Paul*, 223 Ill. 2d at 94; *Airoom*, 114 Ill. 2d at 220. A proceeding under section 2-1401 constitutes an independent and separate action from the original action and must be supported by affidavit or other appropriate showing for matters not in the record. 735 ILCS 5/2-1401(b), (d) (West 2012). Typically, the petition must be filed more than 30 days from entry of the final judgment or order but not more than 2 years after that entry. 735 ILCS 5/2-1401(a), (c) (West 2012). As this court explained:

"Although a section 2-1401 petition is ordinarily used to bring facts to the attention of the trial court which, if known at the time of judgment, would have precluded its entry (*People v. Haynes*, 192 Ill. 2d 437, 464 (2000)), a section 2-1401 petition may also be used to challenge a purportedly defective judgment for legal reasons (*People v. Lawton*, 212 Ill. 2d 285, 297 (2004))." *Paul*, 223 Ill. 2d at 94.

In other words, under this court's established precedent, a section 2-1401 petition can present either a factual or legal challenge to a final judgment or order. As explained below, the nature of the challenge presented in a section 2-1401 petition is critical because it dictates the proper standard of review on appeal. It also helps to explain the perceived discrepancy, or inconsistency, in *Vincent* when compared to our prior decisions on section 2-1401.

¶ 32 We begin by briefly examining the historical underpinnings of section 2-1401 relief. Under the common law, relief from a final judgment was sought by writ of error *coram nobis* filed in the court that rendered the judgment. *Ellman v. De Ruiter*, 412 Ill. 285, 290 (1952); *People v. Toughy*, 397 Ill. 19, 24 (1947). Generally, a writ was intended to bring to the court's attention factual matters that, if known to the court before entry of judgment, would have precluded entry of that judgment. *Ellman*, 412 Ill. at 290; *Toughy*, 397 Ill. at 24.

¶ 33 Almost 150 years ago, though, this court recognized that the use of a common law writ to obtain relief from a final judgment had fallen out of favor and become obsolete. *Ellman*, 412 Ill. at 290-91 (discussing *McKindley v. Buck*, 43 Ill. 488 (1867)); see also *Toughy*, 397 Ill. at 23-24 (analyzing *McKindley*). Accordingly, our legislature abolished the common law practice of using a writ to obtain relief from judgment and replaced it with a statutory scheme, the predecessor of section 2-1401. See *Ellman*, 412 Ill. at 290-91 (citing 1871 Ill. Laws 348, 1907-08 Ill. Laws 461, and Ill. Rev. Stat. 1933, ch. 110, ¶ 196).

¶ 34 Thereafter, Illinois courts "encouraged the development of the statutory equivalent [of the writ] and permitted its use in new situations wherever such was consonant with the history of the common-law writ." *Ellman*, 412 Ill. at 291. Accordingly, we expressed "our belief that the motion may, under our present practice, be addressed to the equitable powers of the court, when the exercise of such power is necessary to prevent injustice." *Ellman*, 412 Ill. at 292.

¶ 35 The current version of the statute authorizing relief from a final judgment or order, section 2-1401 of the Code, provides:

"(a) Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. Writs of error coram nobis and coram vobis, bills of review and bills in the nature of bills of review are abolished. All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered." 735 ILCS 5/2-1401(a) (West 2012).

Consistent with the underlying history, this unambiguous statutory language plainly demonstrates the legislature's intent to abolish the common law writ and substitute it with section 2-1401. Essentially, the legislature intended section 2-1401 to operate as the statutory analog to the common law writ. Necessarily, then, section 2-1401 contemplates the *potential* for equitable relief. See *Paul*, 223 Ill. 2d at 94 (recognizing that the circuit court's equitable powers are invoked by a petition for section 2-1401 relief).

¶ 36    Our seminal decision on section 2-1401 practice is *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986). In *Airoom*, the plaintiffs obtained a default judgment and a $50,000 damage award against the defendant arising from a leaky room addition to plaintiffs' residence. The defendant later filed a section 2-1401 petition seeking to vacate the default judgment. The defendant alleged that the plaintiffs' substituted service of summons on defendant's sale agent was improper, plaintiffs failed to notify defendant of the default proceedings, and the leaks were caused by a preexisting structural defect in plaintiffs' residence. *Airoom*, 114 Ill. 2d at 216-17.

¶ 37    *Airoom* established that to be entitled to relief from a final judgment or order under section 2-1401, the petition must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. *Airoom*, 114 Ill. 2d at 220-21. Under *Airoom*, the quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence. *Airoom*, 114 Ill. 2d at 221. The question of whether relief should be granted lies within the sound discretion of the circuit court, depending on the facts and equities presented. *Airoom*, 114 Ill. 2d at 221. Accordingly, this court held in *Airoom* that a reviewing court will reverse the circuit court's ruling on the petition only if it constitutes an abuse of discretion. *Airoom*, 114 Ill. 2d at 221.

¶ 38    Elaborating on the need for a petitioner to establish "due diligence" for purposes of a section 2-1401 petition, we noted in *Airoom* that due diligence requires the petitioner to have a reasonable excuse for failing to act within the appropriate time. *Airoom*, 114 Ill. 2d at 222. This court admonished in *Airoom*, however, that section 2-1401, is not intended to relieve a litigant of the consequences of his own mistake or negligence. Thus, *Airoom* requires the petitioner to show that the failure to defend against the lawsuit was the result of an excusable mistake and that the petitioner acted reasonably under the circumstances and was not negligent. *Airoom*, 114 Ill. 2d at 222. When assessing the reasonableness of the petitioner's excuse, the circuit court must consider all the surrounding circumstances, including the conduct of the litigants and their attorneys. *Airoom*, 114 Ill. 2d at 222. As with other allegations in a section 2-1401 petition, due diligence must be established by a preponderance of the evidence pursuant to *Airoom*, 114 Ill. 2d at 223. *Airoom* also instructed that when the opposing party challenges the facts supporting the petitioner's request for relief under section 2-1401, a full and fair evidentiary hearing must be held. *Airoom*, 114 Ill. 2d at 223.

¶ 39    Particularly relevant to this appeal, in *Airoom* we also discussed the limited situation when it may be appropriate for a circuit court to relax the due diligence requirements for a section 2-1401 petition. *Airoom* recognized that a "guiding principle[ ]" of administering section 2-1401 relief is that the petition invokes the equitable powers of the circuit court to prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable. *Airoom*, 114 Ill. 2d at 225. Thus, "[b]ecause a section 2-1401 petition is addressed to equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and good conscience may require it a default judgment may be vacated *even though the requirement of due diligence has not been satisfied*." (Emphasis added.) *Airoom*, 114 Ill. 2d at 225.

¶ 40    As noted above, *Airoom* is a key decision in this court's jurisprudence on section 2-1401 proceedings. It may also be fairly described as presenting a fact-dependent challenge to a final

judgment under section 2-1401. The primary issue in *Airoom* depended largely on the specific facts of that case, determining whether the defendant's actions and conduct constituted due diligence. See *Airoom*, 114 Ill. 2d at 222 ("Our inquiry on review is thus directed to the issue of [defendant's] diligence and whether the circuit court erred in finding that [defendant's] conduct did not constitute due diligence."). Historically, this is also the type of challenge involved in a common law writ, the predecessor of section 2-1401. See *Ellman*, 412 Ill. at 290; *Toughy*, 397 Ill. at 24 (the common law writ *coram nobis* was generally intended to bring to the court's attention *factual matters* that if known to the court before the judgment was entered would have precluded its entry).

¶ 41    It is settled, however, that a section 2-1401 petition is not limited to the type of factual challenge involved in *Airoom*. To the contrary, under our precedent, the petition may also raise a legal challenge to a final judgment or order. *Paul*, 223 Ill. 2d at 94 (citing *People v. Lawton*, 212 Ill. 2d 285, 297 (2004)). In fact, this court has favorably reviewed a section 2-1401 petition that raised a legal challenge to a final judgment or order in a number of cases. See *Lawton*, 212 Ill. 2d at 302 (concluding that section 2-1401 permits an individual subject to civil commitment under the Sexually Dangerous Persons Act to challenge the effectiveness of his counsel); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002) (holding that section 2-1401 permits a civil litigant to raise a legal challenge to a final judgment by asserting that it is void for lack of proper service); *People v. Harvey*, 196 Ill. 2d 444, 447 (2001) (determining that section 2-1401 permits a criminal defendant to raise a legal challenge to his extended-term sentence after the requisite two-year limitations period by alleging his sentence is void); but see *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003) (holding that a criminal defendant's claims of ineffective assistance of counsel should be brought under the Post-Conviction Hearing Act and *not* under section 2-1401 of the Code).

¶ 42    In contrast to the fact-dependent challenge to a final judgment under section 2-1401 in *Airoom*, our decision in *Vincent* is representative of a case involving a purely legal challenge to a final judgment under section 2-1401. Specifically, the *pro se* petitioner in *Vincent*, a criminal defendant, filed a section 2-1401 petition alleging that his sentence of five consecutive 20-year prison terms was void. The State did not respond to the petition, and the circuit court denied the petition without a hearing. On appeal, the appellate court affirmed. *Vincent*, 226 Ill. 2d at 4.

¶ 43    The threshold issue this court considered in *Vincent* was whether the circuit court was permitted to dispose of a properly served section 2-1401 petition without the benefit of responsive pleadings and without giving the petitioner notice and an opportunity to be heard. In other words, we considered whether the trial judge in a section 2-1401 proceeding was authorized to enter judgment *sua sponte*. At the time of *Vincent*, the appellate court was divided on the answer to that question. After reviewing the applicable case law on Illinois civil practice, this court determined that a trial judge is authorized to enter judgment *sua sponte* on a section 2-1401 petition. *Vincent*, 226 Ill. 2d at 10-14.

¶ 44    *Vincent* next considered whether the circuit court's decision to deny the section 2-1401 petition in that case was correct. Describing the circuit court's judgment as the functional equivalent of a dismissal for failure to state a cause of action, we noted that whether a circuit court correctly enters judgment on the pleadings or dismisses a complaint is subject to *de novo* review. *Vincent*, 226 Ill. 2d at 14. This court acknowledged, however, that this conclusion conflicted with prior section 2-1401 case law applying an abuse of discretion standard in those

circumstances. *Vincent*, 226 Ill. 2d at 14 (citing *Klein v. La Salle National Bank*, 155 Ill. 2d 201, 206 (1993), and *People v. Sanchez*, 131 Ill. 2d 417, 420 (1989)).

¶ 45 Ultimately, this court concluded in *Vincent* that "[b]ased on our discussion of section 2-1401 case law and the rules of civil procedure that this court has applied to such actions, the abuse of discretion standard is improper in section 2-1401 proceedings in which either judgment on the pleadings or dismissal for failure to state a cause of action has been entered." *Vincent*, 226 Ill. 2d at 15. In *dicta*, we stated that the application of the abuse of discretion standard is the result of the "erroneous belief" that a section 2-1401 petition invokes the equitable powers of the court for justice or fairness. *Vincent*, 226 Ill. 2d at 15. Elaborating on that point, this court added:

> "When the legislature abolished the writs in favor of today's statutory remedy, it became inaccurate to continue to view the relief in strictly equitable terms. Moreover, this court's application of civil practice rules and precedent factored out any notions about a trial court's 'discretion' to do justice. Because relief is no longer purely discretionary, it makes little sense to continue to apply an abuse of discretion standard on review. Simply put, an abuse of discretion standard of review in cases where either judgment on the pleadings or a dismissal has been entered does not comport with the usual rules of civil practice and procedure." *Vincent*, 226 Ill. 2d at 16.

We expressly limited *Vincent*'s discussion of the standard of review to only two dispositions possible under section 2-1401, judgment on the pleadings and dismissals. *Vincent*, 226 Ill. 2d at 16-17. Although refraining from announcing the applicable standard of review for the remaining dispositions available under section 2-1401 (grant or denial of relief after an evidentiary hearing), this court implied in *Vincent* that the abuse of discretion standard of review may be inappropriate in section 2-1401 proceedings. *Vincent*, 226 Ill. 2d at 17 nn.4-5; see also *People v. Laugharn*, 233 Ill. 2d 318, 322 (2009) (citing *Vincent*, 226 Ill. 2d at 18, for the blanket proposition that "[w]e review the dismissal of a section 2-1401 petition *de novo*"). Lastly, *Vincent* held that when the circuit court in a section 2-1401 proceeding enters either judgment on the pleadings or a dismissal the court's order is reviewed *de novo*. *Vincent*, 226 Ill. 2d at 18.

¶ 46 As this appeal demonstrates, the lower courts and practitioners have struggled to reconcile *Vincent*'s application of *de novo* review and apparent rejection of equitable considerations in section 2-1401 proceedings with this court's otherwise consistent prior holdings that section 2-1401 proceedings are firmly rooted in equitable considerations and should be reviewed for an abuse of discretion. We take this opportunity to clarify our decision in *Vincent*.

¶ 47 First, *Vincent* must be viewed in its narrow context of a section 2-1401 petition that raises a purely legal challenge to a judgment by alleging that it is void under subsection (f) of section 2-1401. *Vincent*, 226 Ill. 2d at 5. When viewed in this context, our decision to apply *de novo* review is consistent with established principles of appellate review for cases involving purely legal questions. See *People v. Sutherland*, 223 Ill. 2d 187, 197 (2006) ("purely legal" issue reviewed *de novo*). Accordingly, to the extent that *Vincent* prohibits equitable considerations in section 2-1401 proceedings, that part of our holding must be limited to a petition raising solely a legal issue. Equitable considerations are inapplicable when a section 2-1401 petition raises a purely legal issue because that type of petition will not involve a factual dispute.

¶ 48    Illustrating this point, this court has held that a section 2-1401 petition seeking to vacate a void judgment, a purely legal issue, does not need to establish a meritorious defense or satisfy due diligence requirements. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002); see also *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379 (2005) (citing *Sarkissian* for same point). As this court has explained, "the allegation [in a section 2-1401 petition] that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence." *Sarkissian*, 201 Ill. 2d at 104 (citing *People v. Harvey*, 196 Ill. 2d 444, 452 (2001) (McMorrow, J., specially concurring, joined by Freeman, J.)).

¶ 49    In other words, *Vincent* represents a specific niche of section 2-1401 petitions, those presenting a purely legal claim challenging a final judgment or order as void. Logically, *Vincent*'s holding and commentary on equitable considerations should be limited to that kind of petition.

¶ 50    In stark contrast to a *Vincent*-type petition, a section 2-1401 petition that raises a fact-dependent challenge to a final judgment or order must be resolved by considering the particular facts, circumstances, and equities of the underlying case. See *Airoom*, 114 Ill. 2d at 221 (recognizing that "[w]hether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, *depending upon the facts and equities presented*" (emphasis added)). A fact-dependent challenge is consistent with the use of the common law writ *coram nobis* that section 2-1401 replaced. See *Toughy*, 397 Ill. at 24 (purpose of common law writ was to bring to the court's attention *factual matters* that, if known to the court before entry of judgment, would have precluded entry of that judgment). Under our established precedent, this traditional fact-dependent challenge to a final judgment or order in a section 2-1401 petition is governed by the familiar standards articulated by this court in *Airoom*. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 95 (2006) (adhering to *Airoom* standards when reviewing a section 2-1401 petition raising a fact-dependent challenge to a section 2-1401 petition). Indeed, our research has not revealed any published Illinois decision issued before *Vincent* that did not apply *Airoom*'s standards, or its equivalent, to a section 2-1401 petition that presented a fact-dependent challenge to a final judgment or order.

¶ 51    Accordingly, we hold that when a section 2-1401 petition presents a fact-dependent challenge to a final judgment or order the standards from *Airoom* govern that proceeding. Thus, the petitioner must set forth specific *factual* allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense; and (3) due diligence in filing the section 2-1401 petition for relief. *Airoom*, 114 Ill. 2d at 221. The quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence, and the circuit court's ultimate decision on the petition is reviewed for an abuse of discretion. *Airoom*, 114 Ill. 2d at 221. In addition, when the facts supporting the section 2-1401 petition are challenged by the respondent, a full and fair evidentiary hearing should be held. *Airoom*, 114 Ill. 2d at 223. Relevant to this appeal, the trial court may also consider equitable considerations to relax the applicable due diligence standards under the appropriate limited circumstances. See *Airoom*, 114 Ill. 2d at 226-29 (reviewing petitioner's request to relax the due diligence standards but ultimately declining to relax those requirements under the facts of that case).

¶ 52    We would be remiss if we failed to acknowledge that in two footnotes in *Vincent* we called into question the continued validity of the abuse of discretion standard in section 2-1401

proceedings. *Vincent*, 226 Ill. 2d at 17 nn.4-5. We note, however, that in *Paul*, issued a year before *Vincent* was decided, we extensively considered the propriety of using the abuse of discretion standard in section 2-1401 proceedings. *Paul*, 223 Ill. 2d at 96-99. Ultimately, in *Paul* we declined to apply *de novo* review to a section 2-1401 petition that raised a fact-dependent challenge to a final judgment and, instead, reaffirmed our reliance on an abuse of discretion standard. *Paul*, 223 Ill. 2d at 99. Although *Paul* was decided only one year earlier, *Vincent* did not cite *Paul*, let alone criticize or overrule it. Nevertheless, we decline to abandon the abuse of discretion standard in our decision here. In our view, because this case indisputably falls under the sphere of *Airoom* by presenting a traditional fact-dependent challenge to a final judgment, it is most prudent in this case to adhere to the standards announced in *Airoom*.

¶ 53    Having clarified *Vincent* and determined that the *Airoom* standards apply here, we now consider defendants' fact-based challenge to the default judgment in their section 2-1401 petition. Consistent with *Airoom*, the parties here disagree on whether defendants' section 2-1401 petition sufficiently alleges the existence of a meritorious defense and due diligence requirements. See *supra* ¶ 53 (detailing *Airoom*'s standards). The parties also disagree on whether equitable considerations justify relaxing the applicable due diligence requirements in this case. Under *Airoom*, defendants' allegations in their petition must be established by a preponderance of the evidence. *Airoom*, 114 Ill. 2d at 220-21. Because of the development of this case, however, we decline to reach the merits of the parties' respective arguments on the sufficiency of the allegations in defendants' section 2-1401 petition. Instead, we believe that remanding the cause to the circuit court for further proceedings is warranted for two reasons.

¶ 54    First, the record demonstrates that the lower courts and the parties were not clear on the standards governing these proceedings, particularly on whether discretion and equitable considerations were appropriate. Having clarified that issue, the most reasonable course of action is to allow the parties to litigate this question, and the lower courts to review it, under the proper standards.

¶ 55    Second, at oral argument, plaintiff argued that if this court accepted defendants' interpretation of *Vincent*, the matter should be remanded to the circuit court to enable plaintiff to present additional evidence and facts supporting its challenge to defendants' section 2-1401 petition. In other words, plaintiff contests the sufficiency of the facts relied on by defendants to establish the existence of a meritorious defense and due diligence requirements, the threshold showing for a section 2-1401 petition under *Airoom*. Plaintiff also disagrees with defendants' contention that equitable considerations favor relaxing the due diligence requirements here.

¶ 56    We agree with plaintiff that remand is appropriate under the circumstances of this case. Thus, we decline to decide whether defendants are entitled to relief from the default judgment here. Instead, we believe the best course of action is to remand the cause to the circuit court for further proceedings to permit the parties to develop their respective arguments under the proper standards.

¶ 57                                    III. CONCLUSION

¶ 58    For the reasons explained above, we reverse the judgments of the appellate court and circuit court. We remand the cause to the circuit court for further proceedings consistent with

- 12 -

this opinion.

¶ 59        Appellate court judgment reversed.
¶ 60        Circuit court judgment reversed.
¶ 61        Cause remanded.