2022 IL App (1st) 210072-U

FIFTH DIVISION
MARCH 25, 2022

No. 1-21-0072

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| GREGORY CROVETTI and: | ) | Appeal from the |
| TRILOGY HOLDING, LTD., | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 07 CH 4703 |
| | ) | |
| DOMAIN GROUP, LTD. and | ) | |
| GEORGE SOURI, | ) | Honorable |
| | ) | Michael T. Mullen, |
| Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment denying the defendant's section 2-1401 petition is affirmed, as the defendant invited the alleged error of an evidentiary hearing and the trial court's factual findings were not against the manifest weight of the evidence.

¶ 2    On February 20, 2007, the plaintiffs-appellees, Gregory Crovetti and Trilogy Holding, Ltd.,

filed a civil complaint in the circuit court of Cook County against the defendants-appellants,

Domain Group, Ltd. (Domain Group) and George Souri (collectively, the defendants). On July 11,

2007, an alias summons and complaint was served on Mr. Souri. On November 27, 2017, the

circuit court entered an order finding that Domain Group had been served through the Secretary of State as permitted by statute. On January 3, 2008, the circuit court entered a default judgment for the plaintiffs against the defendants. On December 23, 2014, the plaintiffs filed a petition to revive the judgment as to the defendants. On May 14, 2019, Mr. Souri filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2–1401 (West 2018)). Mr. Souri's section 2-1401 petition sought to vacate the default judgment entered on January 3, 2008, against him on the basis that he was not properly served thereby making the judgment void. The circuit court conducted an evidentiary hearing on October 27, 2020. After the hearing, the circuit court denied Mr. Souri's section 2-1401 petition. The court found that Mr. Souri was effectively served via abode service on July 11, 2007. Following the circuit court's ruling, Mr. Souri filed a motion to reconsider, which was denied on December 28, 2020. Mr. Souri now appeals. On appeal, Mr. Souri argues that: (1) the circuit court erred by denying his section 2-1401 petition, and (2) the circuit court should have granted him leave to amend his petition and attach adequate affidavits. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      On February 20, 2007, the plaintiffs filed a complaint against the defendants alleging: breach of contract; breach of fiduciary duty; inducement of breach of fiduciary duty; conversion; common law fraud; and violation of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 2004)). The complaint sought specific performance, an accounting, and an imposition of a constructive trust. The plaintiffs sought to serve each of the defendants with summons and complaint but had difficulties serving each of the defendants.

¶ 5      Regarding the service for Mr. Souri, he was served on July 11, 2007, via a third alias summons. The affidavit of service from July 11, 2007, specifically stated that the process server

went to a Park Drive address in Melrose Park, Illinois listed for Mr. Souri and delivered the summons and complaint at approximately 8:06 p.m. to a man who refused to give his name but who was a member of Mr. Souri's household. According to the affidavit of service, the man was 5'7'', white male, with gray hair, a medium build, and 56 years old. The affidavit of service also asserted that another copy of the summons and complaint was mailed to Mr. Souri at the same Park Drive address the next day. Additionally, the affidavit of service stated the following:

"I served a member of household 13 years of age or older at [Mr. Souri's] usual place of abode and informed that person of the contents thereof and further mailed a copy of the summons or process in a sealed envelope with postage prepaid to [Mr. Souri], at his usual place of abode within two business days of the service.

Subject served was uncooperative. This is the most current address on [Mr. Souri's] Illinois [driver license] Abstract under [Mr. Souri's driver license number] (Attached) and per the USPS, mail is being delivered to [Mr. Souri] at this address (info attached)."

¶ 6 Regarding the service of the summons and complaint for the Domain Group, after multiple unsuccessful attempts to serve process upon the Domain Group, the plaintiffs filed a motion for alternative service on September 13, 2007. On September 20, 2007, the trial court granted the plaintiffs' motion for alternative service of process against the Domain Group. On November 27, 2007, the court entered an order that the Domain Group was served the summons and complaint through the Illinois Secretary of State, as allowed by statute. On January 3, 2008, the trial court entered a written default judgment for the plaintiffs in their complaint against the defendants. The memorandum of judgment stated, as follows:

"Judgment in favor of the plaintiffs, Gregory Crovetti and Trilogy Holding Ltd., and against defendant, George Souri, as to Count III[, breach of fiduciary duty,] of plaintiffs'

Complaint, in the amount of $60,000, plus prejudgment interest in the amount of $5,967.12, for a total of $65,967.12;

2. Judgement in favor of the plaintiffs, Gregory Crovetti and Trilogy Holding Ltd., and against defendants, Domain Group Ltd. and George Souri, jointly and severally, as to Count VI[, conversion,] of plaintiffs' Complaint, in the amount of $60,000, plus prejudgment interest in the amount of $5,967.12, for a total of $65,967.12.

3. Plaintiffs may collect only one judgment amount of $60,000.00."

¶ 7 On December 23, 2014, the plaintiffs filed a petition to revive the January 3, 2008, judgment, alleging that the defendants had not paid anything towards the judgment or the statutory interest that had accrued from the judgment.[1]

¶ 8 On May 14, 2019, Mr. Souri filed a petition to vacate the judgment entered on January 3, 2008, pursuant to 735 ILCS 5/2-1401(f) (West 2018), which is the subject of this appeal. Mr. Souri argued, in his petition, that he was not served the summons nor the complaint and did not know about the judgment until he was served with a citation on May 7, 2019. He attached the following exhibits to his petition in support of his argument: (1) the affidavit of service; and (2) his personal affidavit stating that he did not live at the Park Drive address on the July 2007 date in question and was never served with the plaintiffs' complaint or summons. As such, he contended that, since he was not properly served with the summons and complaint, the January 3, 2008, judgment was void *ab initio*. On November 19, 2019, Mr. Souri filed a motion for leave to file an amended section 2-

---

[1]The Domain Group is not a party to this appeal. Two different affidavits from the Secretary of the State of Illinois, which were sworn to on September 20, 2007, and January 20, 2015, respectively, assert that the corporation the Domain Group was dissolved on June 8, 2007. The January 20, 2015, affidavit stated that George Souri was the registered agent of the Domain Group. The record is silent as to whether Mr. Souri was served as a registered agent of the Domain Group and the status of the Domain Group after the petition to revive the judgment was filed.

1401 petition, which would include affidavits from his parents, Salma Souri and Michael Souri.[2] In the alternative, he asked the trial court to grant him an evidentiary hearing. On November 20, 2019, the court denied his motion for leave to amend his section 2-1401 petition but granted his request for an evidentiary hearing.

¶ 9       The trial court conducted an evidentiary hearing on the petition on October 27, 2020. Mr. Souri called three witnesses: his father, Michael Souri, his mother, Salma Souri, and himself.

¶ 10       Mr. Souri testified that the Park Drive address in Melrose Park, Illinois was his parents' home, and he had not resided there since approximately July or September of 2006. His mother, father, and younger sister still lived in that family home. It was his testimony that in July 2007, he was living on Fulton Street in Chicago, Illinois. He stated that he did not change his mailing address with the post office since he was in month-to-month and short-term leases at that time. He testified that in July 2007, no one who was 5'7'' with gray hair lived in the Park Drive home. His father was 5' 6" and weighed approximately 170 pounds. In July 2007, his father was bald and had a goatee. Mr. Souri himself was 5'8.5''. He admitted that his father, Michael, had gray *facial hair*, but had been bald "for as long as [he could] remember." He further testified that he never received a complaint nor summons in the case during 2007.

¶ 11       On cross-examination, Mr. Souri admitted that he did not change his address from the Park Drive address with the Department of Motor Vehicles or the post office. He also stated that his mailing address was still the Park Drive address at the time of the hearing. Additionally, he acknowledged that he had various tax liens which listed the Park Drive address. He further testified that a business mortgage recorded for him on January 29, 2008, also had the Park Drive address

---

[2]For clarity, we will refer to Mr. Souri's parents by their given names.

listed as his personal address. Mr. Souri admitted that he signed that mortgage on January 15, 2008. When the trial court inquired if he had utility bills for the residence, which he claimed to be occupying at the time in question, he stated that he "wasn't able to locate those." Mr. Souri acknowledged that he did not produce any documentation during the hearing that verified an address other than the Park Drive address.

¶ 12     Michael Souri testified that he had resided at the Park Drive address for 28 years, and in 2007, he resided there with his wife and daughter. He stated that he is 5'5'' and has been bald since 2000 with a small amount of gray and black facial hair. In July 2007, he owned and operated a jewelry store, which had business hours from 10 a.m. to 8 p.m., Monday through Saturday. He closed the store every night and did not get home until approximately 8:30 or 9 p.m. In July 2007, no other males lived in the house on Park Drive. Michael testified that he never received a summons nor complaint for his son related to the plaintiffs' lawsuit.

¶ 13     On cross-examination, Michael admitted to receiving mail for his son at the Park Drive address from time to time and would later give it to his son. He also stated he has a medium build, is 5'5'', and was 59 years old in July 2007. He also admitted that he did not have any documentation to prove he was at his jewelry store at the time the summons and complaint were reportedly served on July 11, 2007. Likewise, he had nothing to show that he was bald at that time in question.

¶ 14     Salma Souri testified that she did not receive the complaint nor summons in the plaintiffs' lawsuit. In July 2007, her husband was bald. She also stated that in July 2007, her son did not live with her at the Park Drive address. On cross-examination, she again said that her husband has been bald since 2000 and that he shaved his head every day.

¶ 15    Following the evidentiary hearing, the trial court denied Mr. Souri's section 2-1401 petition. In the trial court's ruling, it explained that the question was whether the Park Drive address could be considered Mr. Souri's "usual place of abode," which was a question of fact. The trial court found that the Park Drive address was Mr. Souri's usual place of abode, though he may have occasionally lived elsewhere. The trial court further stated it believed that Michael was the individual who was served with the complaint and summons on July 11, 2007, based on credibility determinations from his testimony. The section 2-1401 petition seeking to vacate the January 3, 2008, judgment was denied.

¶ 16    On November 26, 2020, Mr. Souri filed a motion to reconsider, which was denied on December 28, 2020. Mr. Souri filed a notice of appeal on January 26, 2021.

¶ 17                                        ANALYSIS

¶ 18    We note that we have jurisdiction to consider this matter. A judgment or order granting or denying relief on a section 2-1401 petition vests jurisdiction in the appellate court (Ill. S. Ct. R. 304(b)(3) (eff. Mar. 8, 2016)), and Mr. Souri filed a timely notice of appeal following the trial court's judgment denying his section 2-1401 petition. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 19    On appeal, Mr. Souri argues that the trial court erred in denying his section 2-1401 petition. His argument is two-fold: (1) that the trial court improperly shifted the burden of proof to him by holding an evidentiary hearing and (2) that neither he nor a household member was served with the summons or the complaint in the plaintiffs' 2007 case. He contends that the January 3, 2008, default judgment is void *ab initio*, since the court did not have personal jurisdiction over him, and thus, the trial court should have granted his section 2-1401 petition on that basis. In the first part of his argument, Mr. Souri urges that this case should be remanded to the trial court. In the second part of his argument, he asks this court to decide the issue on the merits. Before turning to the

merits of his arguments we must determine the appropriate standard of review in this case.

¶ 20    Section 2-1401 creates a statutory procedure authorizing a trial court to vacate or modify a final order of judgment in civil and criminal proceedings. *Warren County Soil and Water Conservation Dist. v. Walters*, 2015 IL 117783, ¶ 31. Although it is within the same proceeding as the contested judgment, a section 2-1401 petition commences a new and separate cause of action. *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 23. That new proceeding is subject to the usual rules of civil procedure. *Price*, 2015 IL 117687, ¶ 23. The petitioner in a section 2-1401 proceeding can bring a factual challenge or a legal challenge to the final judgment which had been entered by the trial court in the original case. *Warren County*, 2015 IL 117783, ¶ 41.

¶ 21    When bringing a factual challenge, the purpose of a section 2-1401 petition is to enable a party to bring facts to the trial court's attention, which if known by the court at the time when it entered the final order or judgment, would have prevented the entry of that contested judgment or order. *Warren County*, 2015 IL 117783, ¶ 31. To be entitled to relief under a factual challenge asserted pursuant to section 2-1401, the petitioner must affirmatively set forth specific factual allegations establishing: (1) the existence of a meritorious claim; (2) due diligence in presenting his claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition. *McGinley Partners, LLC v. Royalty Properties, LLC*, 2018 IL App (1st) 172976, ¶ 26. Whether a section 2-1401 petition should be granted on the basis of a factual challenge lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221. "A [trial] court abuses its discretion when its ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Bank of America, N.A. v. Adeyiga,* 2014 IL App (1st) 131252, ¶ 116.

¶ 22    By contrast, when a petitioner presents a purely legal challenge, such as a petition to vacate a void judgment, the petitioner does not need to prove a meritorious defense or show due diligence. *Warren County*, 2015 IL 117783, ¶ 48. Accordingly, when a section 2-1401 petition is based upon a legal challenge, our standard of review is *de novo*. *Warren County*, 2015 IL 117783, ¶ 47.

¶ 23    In the instant case, Mr. Souri's section 2-1401 petition alleged the January 3, 2008, judgment is void based on the court's lack of personal jurisdiction over him due to improper service. When a defendant is not properly served with the summons and complaint which initiates the action, the trial court does not acquire jurisdiction over him. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986). Therefore, any order entered against that defendant is void *ab initio*. *State Bank of Lake Zurich*, 113 Ill. 2d at 308. Ordinarily, that would result in a *de novo* review. *Warren County*, 2015 IL 117783, ¶ 48. However, in this case, the trial court granted an evidentiary hearing which modifies our standard of review. When a trial court conducts an evidentiary hearing on a section 2-1401 petition pursuant to a legal challenge, we review the court's factual findings under a manifest weight of the evidence standard but review *de novo* the legal effects of its findings and conclusion regarding the ultimate issue of jurisdiction. *Herrera v. Herrera*, 2021 IL App (1st) 200850, ¶ 40. Thus, we review the trial court's factual findings in this case under a manifest weight of the evidence standard and review *de novo* its ultimate ruling that the January 3, 2008, judgment is not void.

¶ 24    We turn to the first prong of Mr. Souri's argument regarding whether the trial court erred by granting an evidentiary hearing.

¶ 25    First, Mr. Souri suggests that the trial court should have addressed this matter solely on his affidavits, without an evidentiary hearing. He argues that the court should have shifted the burden to the plaintiffs to show that service of the summons and complaint was proper. We note Mr.

Souri's initial petition was insufficient and would have been subject to dismissal since it was based on his uncorroborated and self-serving affidavit. See *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 172 (1983). On November 19, 2019, prior to a hearing or motion to dismiss by the plaintiffs, Mr. Souri filed a motion for leave to amend his section 2-1401 petition to include affidavits from his parents or alternatively, requested the trial court to grant an evidentiary hearing. Interestingly, the trial court denied Mr. Souri leave to amend the petition but granted his request for an evidentiary hearing. We note that the trial court should have allowed the amended petition instead of granting an evidentiary hearing because, at that point, there was no factual dispute based upon Mr. Souri's initial petition. However, this error by the trial court was invited by Mr. Souri because *he requested* an evidentiary hearing. The rule of invited error prohibits a party from seeking to proceed in one manner in the trial court and then contending on appeal that the requested action was an error by the trial court. *Gaffney v. Board of Trustees of Orland Fire Protection District*, 2012 IL 110012, ¶ 33. "The rationale for the rule [of invited error] is that it would be manifestly unfair to grant a party relief based on error introduced into the proceedings by that party." *Gaffney*, 2012 IL 110012, ¶ 33.

¶ 26    That rationale is readily apparent in this case. Since the trial court granted Mr. Souri's request for an evidentiary hearing, we do not know how the plaintiffs would have responded to Mr. Souri's section 2-1401 petition if Mr. Souri had been allowed to amend it. Nor do we know how their response would have impacted the case. It would be illogical to allow Mr. Souri to request an evidentiary hearing and then argue on appeal that the trial court erred in conducting the evidentiary hearing that he requested. As such, we decline to review this alleged error which Mr. Souri clearly invited.

¶ 27    We next turn to the question of whether the trial court erred in finding that the January 3, 2008, judgment was not void because Mr. Souri was properly served via substitute service, thereby giving the court personal jurisdiction over him.

¶ 28    A section 2-1401 petition is the appropriate pleading to vacate a void judgment and can be brought more than two years after the judgment. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002). Mr. Souri's section 2-1401 petition filed on May 14, 2019, alleged that the January 3, 2008, judgment was void due to lack of service. Section 2-203(a) of the Code, which governs abode or substitute service, states:

> "(a) Except as otherwise expressly provided, service of summons upon an individual defendant shall be made (1) by leaving a copy of the summons with the defendant personally, (2) *by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode*, or (3) as provided in Section 1-2-9.2 of the Illinois Municipal Code with respect to violation of an ordinance governing parking or standing of vehicles in cities with a population over 500,000." (Emphasis added.) 735 ILCS 5/2-203(a)(2) (West 2018).

¶ 29    When an officer or authorized person making service of a summons on a defendant does so by delivering a copy to another person by substituted service, they must show "strict compliance with every requirement of the statute authorizing such substituted service," since the return of substituted service does not carry the same presumption of validity as a return of personal service on the defendant. *State Bank of Lake Zurich*, 113 Ill. 2d at 309. As such, a return or affidavit of

service for substituted service must state: (1) that a copy of the summons was left at the usual place of abode of the defendant with a family or household member above the age of 13; (2) the served family or household member was informed of the contents of the summons; and (3) the officer or other authorized person making service sent a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode.

¶ 30    While the affidavit of service from a process server is evidence that he complied with Section 2-203(a) of the Code, this can be overcome by a contradictory affidavit. *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 26. "[W]hen the opposing party elects to forgo filing a motion attacking the sufficiency of the petition and answers on the merits, the respondent is deemed to have waived any question as to the petition's sufficiency, and the petition will be treated as properly stating a cause of action." *People v. Vincent*, 226 Ill. 2d 1, 8. Any claim of insufficiency is defaulted on appeal. *Vincent*, 226 Ill. 2d at 8. If the respondent does not answer the petition, the respondent is deemed to have admitted all well-pleaded facts. *Vincent*, 226 Ill. 2d at 9. As such, a "trial court may decide the case on the pleadings, affidavits, exhibits and supporting material before it, including the record of the prior proceedings." *Vincent*, 226 Ill. 2d at 9. On the other hand, "[t]he officer's return is *prima facie* evidence of service which cannot be set aside upon the uncorroborated affidavit of the person served. It can only be set aside by clear and satisfactory evidence." *Nibco, Inc*., 98 Ill. 2d at 172. Additionally, when the facts underlying a section 2-1401 petition are challenged by the respondent, a full and fair evidentiary hearing should be held on the matter of the court's jurisdiction. *Warren County*, 2015 IL 117783, ¶ 51.

¶ 31    In this case, the affidavit of service in question, on its face, strictly complied with the rule in section 2-203 of the Code. In the hearing, the trial court was tasked with determining if service was proper, specifically, if the Park Drive address was Mr. Souri's usual abode and, if so, whether

a household or family member was served at that abode. Mr. Souri testified at the evidentiary hearing that he did not live at the Park Drive address in 2007. Although when specifically asked by the court, he did not provide the court with any documentation, other than his testimony, to verify that his address was *not* the Park Drive address. Even when given the opportunity to provide other evidence such as a lease agreement or utility bills, he was unable to do so. At the same time, he acknowledged that his driver's license, mailing address, and a business mortgage application all listed the Park Drive address as his residence at the time in question. Accordingly, the trial court determined that, though Mr. Souri may have lived in various locations, he nonetheless presented himself to others as residing at the Park Drive address and, thus, the court found it to be his usual place of abode. The trial court listened to the testimony, reviewed the evidence, and concluded that the Park Drive address was Mr. Souri's usual place of abode. Thus, we cannot say its determination was against the manifest weight of the evidence. See *City of Chicago v. Old Colony Partners, L.P.*, 364 Ill. App. 3d at 812 (For a factual determination to be against the manifest weight of the evidence standard, it "requires a finding that all reasonable people would find the opposite conclusion is clearly apparent").

¶ 32   After determining that the Park Drive address was Mr. Souri's usual place of abode, the trial court reviewed whether a household or family member was properly served there. The testimony was consistent and established that Mr. Souri's mother, father, and sister were the only people who resided at the Park Drive home in July 2007 when the process server's affidavit of service, alleged that he served someone at that address with the summons and complaint. The trial court stated that after observing the witnesses and making credibility determinations, it found Mr. Souri's father's testimony that he was not the person served, to be incredible. The trial court is in the best position to observe the demeanor and conduct of a witness in making its credibility

determinations and our review of those determinations is limited to whether it was against the manifest weight of the evidence. *See Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 33    Consequently, the trial court correctly rejected Mr. Souri's argument that the January 3, 2008, judgment is void *ab initio* based on lack of personal jurisdiction. Based on our analysis, the trial court did not err in denying Mr. Souri's section 2-1401 petition to vacate the judgment.

¶ 34    Mr. Souri, alternatively, argues that the trial court should have granted him leave to amend his petition to strengthen his affidavits and because the trial court did not do this, the trial court put the burden on him to prove lack of jurisdiction. He contends that if this court applies any weight to his insufficient affidavits, we should consider this argument.

¶ 35    As noted, Mr. Souri requested that the trial court grant an evidentiary hearing, and accordingly, invited the alleged error of which he now complains. Thus, he cannot request that the trial court's judgment be reversed, and the case be remanded on that basis. Notwithstanding, he argues that if we assign any weight to the sufficiency of his affidavit, we should consider this contention. However, our decision did not examine whether the affidavit presented in his section 2-1401 petition was sufficient. As noted by the trial court, after an evidentiary hearing occurred, his affidavit and the proposed affidavits from his parents became of no moment. See *TCA International, Inc. v. B & B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 532 (1998) (stating that when there is a factual dispute, the court should have an evidentiary hearing to resolve it). Since neither we nor the trial court considered the affidavits in this case, this argument is irrelevant.

¶ 36    Accordingly, we affirm the trial court's judgment denying the section 2-1401 petition.

¶ 37                                CONCLUSION

- 14 -

¶ 38 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County denying Mr. Souri's section 2-1401 petition, which sought to vacate the January 3, 2008, default judgment against him.

¶ 39 Affirmed.