2022 IL App (1st) 180882-UB

SIXTH DIVISION
November 23, 2022

No. 1-18-0882

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 07 CR 18083 (01) |
| | ) | |
| LYNNESIA HILES-SLOAN, | ) | The Honorable |
| | ) | Thomas Joseph Hennelly, |
| Petitioner-Appellant. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Walker concurred in the judgment and opinion.

**ORDER**

¶ 1    *Held*:   We reverse the circuit court's *sua sponte* dismissal of petitioner's section 2-1401(b-5) petition, and remand for further proceedings.

¶ 2    Petitioner, Lynnesia Hiles-Sloan, appeals from the circuit court's *sua sponte* dismissal of

her section 2-1401(b-5) petition (735 ILCS 5/2-1401(b-5) (West 2018)) seeking relief from her

58-year prison sentence for the vicious murder of her blind, disabled, and severely malnourished

minor daughter, and for a new sentencing hearing, on the basis that she was a victim of domestic

violence. We find that Hiles-Sloan's petition failed to allege sufficient facts to state a claim under

section 2-1401(b-5), but the circuit court erred by dismissing the petition with prejudice. Hence, we reverse the circuit court's judgment and remand with instructions for the circuit court to appoint counsel and allow Hiles-Sloan to replead.

¶ 3                                    I. BACKGROUND

¶ 4     In May 2012, Hiles-Sloan pleaded guilty to one count of first degree murder in connection with the death of her daughter, Shavon. The State presented the following factual basis for the plea. In August 2007, Shavon was 13 years old, blind, and severely learning disabled. Hiles-Sloan gave a statement to the police that, on August 3, 2007, she and her husband, Gabriel Sloan,[1] went to the currency exchange with their children. When Shavon kept falling down, Sloan slammed Shavon to the ground, threw her against a wall, and hit her head into the ground. Sloan suggested that Shavon was pretending to have seizures and Hiles-Sloan agreed with him. Hiles-Sloan grabbed Shavon by the hair, threw her through a door, and hit Shavon with an extension cord and a wooden board. Shavon became unresponsive. A repair person was in the home at the time, and neither Hiles-Sloan nor Sloan called 911 until the repair person left. Hiles-Sloan and Sloan hid the wooden board in an alley a block away from their home, which police officers later recovered after Hiles-Sloan led them to it. Shavon was taken to the hospital where she was pronounced dead. Shavon had suffered extensive external and internal injuries and was malnourished. The medical examiner declared Shavon's death a homicide.

¶ 5     The circuit court considered evidence in aggravation and mitigation, a presentence investigation report, a victim impact statement from Shavon's biological father, and Hiles-Sloan's apology to the court, although those materials are not included in the record before us. The circuit

---

[1]A jury found Sloan guilty of murder and he was sentenced to 50 years' imprisonment. We affirmed his conviction on direct appeal over his contention that he received ineffective assistance of trial counsel. *People v. Sloan*, 2016 IL App (1st) 142257-U.

court sentenced Hiles-Sloan to 58 years in prison. The circuit court denied a subsequent motion to withdraw the plea, and Hiles-Sloan did not appeal.

¶ 6     In December 2017, Hiles-Sloan filed the *pro se* section 2-1401(b-5) petition at issue in this appeal and made the following domestic violence allegations:

> "I am a battered women who was physically abused by Gabriel Sloan, who is my co-defendant on this case. He use [*sic*] to beat me upside my head, punch me, kick me and control me and my children. This abuse started after the death of my mother Altira Hiles in December of 1999. My oldest son Joevonne witnessed this abuse, my mother-in-law Carolyn Sloan and my youngest son Lavon. My oldest son Joevonne will be making a statement to the abuse. That will be added later in supporting documents.

> My husband was abusive to my daughter and I felt responsible for this. *** I believed [Sloan] had caused her death and because I didn't protect her due to being abused myself it was my fault.

> * * *

> Upon entering [the Illinois Department of Corrections (IDOC)] I was diagnosed with PTSD, [d]epression and anxiety disorder. I believe I suffered from all of this prior to incarceration and as such these conditions affected my ability to understand the nature of my acts or to conform my conduct to the requirements of the law.

> Petitioner believes that had this evidence been known by the court at the time of trial or sentencing petitioner may have received a lesser sentence."

Hiles-Sloan asserted that, under Public Act 99-384 (eff. Jan. 1, 2016) (amending 735 ILCS 5/2-1401), she was "entitled to a new sentencing hearing using [her] abuse as a mitigating factor."

¶ 7       There is a second part to Hiles-Sloan's petition that is unrelated to the domestic violence she allegedly suffered. She alleges that in August 2013 and February 2014, Sloan's attorney, Brendan Max, visited her in prison and informed her that a second autopsy revealed that Shavon died from dehydration and that Shavon "was not starved to death, abused or murdered." Max showed her a copy of the second autopsy report but never gave her a copy. However, because no argument is raised on appeal as to these allegations, we do not address them any further.

¶ 8       According to the certificate of service, Hiles-Sloan mailed the petition, along with a motion to appoint counsel, to the clerk of the circuit court and the State's Attorney's office on December 8, 2017, by placing the petition in the mail at the Logan Correctional Center.

¶ 9       On February 6, 2018, after the time had expired for the State to respond, the circuit court, in open court with an assistant state's attorney and assistant public defender present, stated "[t]the petition for relief of judgment is reviewed by the [c]ourt. The [c]ourt considers the petition to be frivolous and patently without merit." On March 29, 2018, Hiles-Sloan mailed a notice of appeal to the clerk of the circuit court, which was filed-stamped on April 4, 2018. In her notice of appeal, Hiles-Sloan asserted that the date of the judgment order appealed from was March 2, 2018, even though the circuit court denied her petition on February 6, 2018.

¶ 10                                    II. JURISDICTION

¶ 11       The circuit court entered its judgment dismissing Hiles-Sloan's section 2-1401(b-5) petition on February 6, 2018. Hiles-Sloan mailed her notice of appeal to the clerk of the circuit court on March 29, 2018, and it was file-stamped April 4, 2018. We initially dismissed her appeal for lack of jurisdiction because she filed her notice of appeal more than 30 days after the circuit

court's judgment. On June 1, 2022, our supreme court entered a supervisory order instructing us to vacate our judgment and treat Hiles-Sloan's notice of appeal as a properly perfected appeal from the circuit court's judgment dismissing her petition. Hiles-Sloan v. Pierce, No. 128507 (June 1, 2022). We have jurisdiction over Hiles-Sloan appeal pursuant to our supreme court's supervisory order.

¶ 12                                    III. ANALYSIS

¶ 13     Section 2-1401 of the Code provides a mechanism for seeking relief from an otherwise final judgment. 735 ILCS 5/2-1401(a) (West 2018). The petition is to be filed in the same proceeding in which the order was entered and constitutes a new proceeding. *Id.* § 2-1401(b). If the petition raises matters that are not of record, the petitioner must support those matters with an affidavit or "other appropriate showing." *Id.*

¶ 14     A section 2-1401 petition initiates a civil proceeding governed by the usual rules of civil practice. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). The petition itself is essentially a complaint. *Id.* The circuit court may deny or dismiss a section 2-1401 petition *sua sponte* where the petition is legally or factually insufficient (*id.*) and "it is clear on its face that the requesting party is not entitled to relief as a matter of law" (*id.* at 12). "In determining legal sufficiency, the court must accept as true all well-pleaded facts and determine if the petition, viewed in the light most favorable to the petitioner, is sufficient to state a cause of action." *First National Bank of Mattoon v. Mattoon Federal Savings & Loan Ass'n*, 175 Ill. App. 3d 956, 959 (1988). And in keeping with the rules of civil practice, the circuit court should permit amendment "where doing so would yield a meritorious claim." *Vincent*, 226 Ill. 2d at 13, n.3; 735 ILCS 5/2-616(a) (West 2020).

¶ 15     We ordinarily review a circuit court's judgment on a fact-dependent section 2-1401 petition for an abuse of discretion. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL

5

117783, ¶ 51; *Smith v. Airoom*, 114 Ill. 2d 209, 221 (1986). But here, the circuit court *sua sponte* found the petition "to be frivolous and patently without merit," which was effectively a dismissal of the petition that we review *de novo*. *Vincent*, 226 Ill. 2d at 18.

¶ 16    Generally, a section 2-1401 petition must allege facts showing the existence of a meritorious claim, due diligence in presenting the claim in the circuit court, and due diligence in filing the section 2-1401 petition. *Airoom*, 114 Ill. 2d at 220-21. Petitioner has the burden of pleading, and ultimately proving by a preponderance of the evidence, each element of a section 2-1401 petition. *Warren County*, 2015 IL 117783, ¶ 37. While no published decision from this court has discussed due diligence requirements in the context of a section 2-1401(b-5) petition, here, neither party raises any argument directed at those requirements. Therefore, we limit our analysis to the specific provisions of section 2-1401(b-5) that were argued by the parties.

¶ 17    Section 2-1401(b-5) of the Code of Civil Procedure permits a petitioner to seek relief from a final judgment where:

> "(1) the movant was convicted of a forcible felony;
>
> (2) the movant's participation in the offense was related to him or her previously having been a victim of domestic violence as perpetrated by an intimate partner;
>
> (3) no evidence of domestic violence against the movant was presented at the movant's sentencing hearing;
>
> (4) the movant was unaware of the mitigating nature of the evidence of the domestic violence at the time of sentencing and could not have learned of its significance sooner through diligence; and

(5) the new evidence of domestic violence against the movant is material and noncumulative to other evidence offered at the sentencing hearing, and is of such a conclusive character that it would likely change the sentence imposed by the original trial court." *Id.* § 2-1401(b-5).

¶ 18 A section 2-1401 petition may raise a fact-dependent or legal challenge to the circuit court's order or judgment. *Warren County*, 2015 IL 117783, ¶ 41. A petition under section 2-1401(b-5) necessarily presents a fact-dependent challenge to the circuit court's sentencing order, as it seeks to assert facts that were not previously asserted, which, if true, would warrant the circuit court setting aside the petitioner's sentence and resentencing petitioner on the underlying criminal conviction.

¶ 19 At the outset, we note there is no dispute that Hiles-Sloan satisfied section 2-1401(b-5)(1)'s requirement to allege that she was convicted of a forcible felony, as she pleaded guilty to Shavon's murder. There is also no dispute that her petition satisfied section 2-1401(b-5)(3) because the trial court did not hear any evidence regarding Sloan's abuse of Hiles-Sloan in reaching its sentencing decision. Further, Hiles-Sloan's petition asserted that "due to changes in the law," she was "now able to present these facts," which we can infer to mean that she was "unaware of the mitigating nature of the evidence of the domestic violence at the time of sentencing and could not have learned of its significance sooner through diligence," thereby satisfying section 2-1401(b-5)(4).

¶ 20 As a threshold matter, the State contends that Hiles-Sloan did not support the allegations in her petition "by any affidavits, with facts of any incidents, nor any attached reports or medical records." It is undisputed, however, that Hiles-Sloan's petition is verified, and her allegations, at least for the most part, fall within her own personal knowledge. At this stage, we must accept those factual allegations as true.

¶ 21    We now turn to the disputed elements of Hiles-Sloan's section 2-1401(b-5) petition. Section 2-1401(b-5)(2) requires a petitioner to allege facts establishing that her "participation in the offense was related to *** her previously having been a victim of domestic violence as perpetrated by an intimate partner." Taken together, a petitioner must allege sufficient facts supporting (1) the existence of domestic violence by an intimate partner, and (2) a relationship between the abuse and the petitioner's participation in the offense. Here, Hiles-Sloan sufficiently alleged that she was a victim of domestic violence perpetrated by Sloan. Specifically, she alleged she was a "battered woman," and that Sloan "use [*sic*] to beat me upside my head, punch me, kick me and control me and my children." The abuse started in December 1999.

¶ 22    Hiles-Sloan must also allege sufficient facts showing that her participation in the offense was related to Sloan's abuse. Hiles-Sloan alleged that, at some point after being incarcerated in prison in 2012, she was diagnosed with PTSD (by which we assume she means post-traumatic stress disorder), depression, and anxiety disorder, and she "believe[d] [she] suffered from all of this prior to incarceration and as such these conditions affected my ability to understand the nature of my acts or to conform my conduct to the requirement of the law." We note that, other than her allegations, there are no documents attached to her petition to support or corroborate any diagnosis of PTSD, depression, or anxiety disorder, or the bases for any of those diagnoses.

¶ 23    On appeal, Hiles-Sloan contends that the allegations in her petition "establish that, at the time of the murder and as a consequence of the abuse that she suffered at the hands of [Sloan], she was suffering from a condition—PTSD—that may have made her prone to commit an unprovoked act of violence." To reach this conclusion, Hiles-Sloan asserts that "[o]ne of the symptoms of [PTSD] is unprovoked outbursts of anger, which can be expressed through physical aggression," and she cites to the American Psychiatric Association's Diagnostic and Statistical Manual of

Mental Disorders. She further argues that she "gave a statement to law enforcement after her arrest in which she averred that she had beaten Shavon because she was angry." We, however, do not consider Hiles-Sloan's assertion—made for the first time in her appellate brief—that one of the symptoms of PTSD is unprovoked outbursts of anger, which can be expressed through physical aggression. This is a factual allegation that does not appear in her petition and that cannot be inferred from any of the factual assertions that she did make. Nor did she attach any materials to her petition regarding PTSD. In other words, her appellate assertion relies on scientific materials that were never presented to the circuit court and were not referenced or relied on in her petition. We therefore confine our assessment of her petition to the factual allegations she made and the reasonable inference that can be drawn therefrom.

¶ 24    The State contends that Hiles-Sloan "cannot show that participation in the murder of [Shavon] was related to the alleged abuse." The State argues that Hiles-Sloan did not plead any facts indicating that she "was forced by violence or threat of violence to participate in abusing the victim," nor are there well-pleaded factual allegations "that indicate [Hiles-Sloan] suffered from any condition at the time of the murder that would cause or force her participation."

¶ 25    Section 2-1401(b-5) does not require a petitioner to allege every single instance of domestic violence. Nor do we necessarily agree with the State's implicit assertion that a petitioner must show some immediate and strict temporal connection between the abuse (or threat of abuse) and the petitioner's participation in the offense. Nevertheless, section 2-1401(b-5) requires specific factual allegations from which a court can draw a connection between the abuse alleged and a petitioner's participation in the offense. Here, we agree with the State that Hiles-Sloan's petition, as pleaded, does not adequately allege that her participation in Shavon's murder was related to Sloan's abuse.

9

¶ 26    First, even accepting as true Hiles-Sloan's allegations that she was abused, her allegations are vague. Hiles-Sloan simply alleges that Sloan began physically and emotionally abusing her starting in 1999. She does not specifically allege that she was subject to domestic violence around the time of Shavon's murder. Her petition alleged that there were witnesses to the abuse, but that assertion is of limited value because there are no affidavits attached to the petition from any alleged witnesses. While an inference may be drawn from the petition that Sloan's abuse continued after 1999, section 2-1401 requires specific factual allegations to support a meritorious claim. Here, Hiles-Sloan makes no factual assertions about the abuse beyond the fact that it started eight years before Shavon's murder. That says nothing about the relationship between the domestic violence that she was subjected to and her participation in the offense.

¶ 27    The factual basis for Hiles-Sloan's plea included facts that she and Sloan regularly disciplined Shavon using the methods that ultimately resulted in Shavon's death and that Hiles-Sloan hit Shavon because she was angry. Hiles-Sloan's petition, however, does not allege any specific facts tending to show that she disciplined Shavon in that manner because Sloan abused or threatened to abuse Hiles-Sloan. For instance, there are no factual allegations in the petition from which we might infer that Hiles-Sloan regularly disciplined Shavon by hitting her with an extension cord and wooden board—either on her own initiative or at Sloan's instruction—out of fear that Hiles-Sloan herself would be abused by Sloan if she did not do so. Nor are there any factual allegations from which we might infer that any trauma Hiles-Sloan experienced from Sloan's abuse resulted in Hiles-Sloan physically disciplining Shavon or coming to accept that physical discipline or beatings were appropriate. The mere allegation that Sloan began abusing Hiles-Sloan in 1999 says nothing specific about why Hiles-Sloan participated in Shavon's murder in 2007, and we do not see any reasonable inferences that can be drawn from the petition's factual

allegations that might bridge the gap between Sloan's abuse and Hiles-Sloan's participation in the murder.

¶ 28    Second, Sloan's allegations that she was diagnosed with PTSD, depression, and anxiety disorder upon entering IDOC in 2012—and that she believed she suffered from those conditions prior to those diagnoses—similarly fall short of adequately alleging that her participation in Shavon's murder was related to being abused by Sloan. Perhaps an inference may be drawn that her PTSD, depression, and anxiety were due in part to Sloan's abuse, although there are no express allegations in the petition to that effect. But even so, Hiles-Sloan did not allege any facts about her mental state at the time of Shavon's murder. Merely alleging that she was abused and that she had PTSD does not go any distance toward making a showing that the abuse and PTSD were related to Hiles-Sloan's participation in Shavon's murder.

¶ 29    We further note that Hiles-Sloan did not attach any materials to her petition to support her PTSD, depression, and anxiety disorder diagnoses. Any diagnosis of PTSD, depression, and anxiety disorder—which purportedly occurred in 2012—is not of record. Section 2-1401(b) requires the petition be supported by an affidavit "or other appropriate showing as to matters not of record." 735 ILCS 5/2-1401(b) (West 2020). The mere allegation that she was diagnosed with those conditions is not supported by further allegations or materials supporting the bases or contours of those diagnoses. Additional details surrounding her diagnoses might shed light on what factors led to those diagnoses and how those conditions affected her behavior. But her petition, as pleaded, says nothing about how those diagnoses played any role in her participation in Shavon's murder.

¶ 30    Hiles-Sloan also alleges that she believes she suffered from PTSD, depression, and anxiety disorder before her incarceration in 2012 and "these conditions affected my ability to understand

11

the nature of my acts or to conform my conduct to the requirements of the law." This allegation is for the most part conclusory and presumably beyond the knowledge of a lay person. We fail to see how we can accept that factual allegation as true where nothing in the record suggests that Hiles-Sloan could competently testify that she suffered from those conditions prior to those diagnoses and how those conditions might explain any of her past behavior. Those allegations call for a medical opinion that Hiles-Sloan does not allege she is competent to give, and she did not attach any materials to her petition that would support her position.

¶ 31    Relatedly, even accepting Hiles-Sloan's allegation that she "believe[d]" she suffered from those conditions prior to being diagnosed in 2012, she does not allege any further facts from which we might infer that she was laboring under those conditions in 2007, specifically on the date of Shavon's murder, and how those conditions affected her behavior on that day. Given the five-year gap between Shavon's murder and Hiles-Sloan being diagnosed with PTSD, depression, and anxiety disorder, and the lack of any factual allegations indicating Hiles-Sloan's state of mind at the time of the murder, we fail to see how we can infer from the well-pleaded factual allegations that any PTSD, depression, or anxiety disorder was the product of Sloan's abuse or played any role in Hiles-Sloan's participation in Shavon's murder.

¶ 32    The deficiencies in Hiles-Sloan's factual allegations come into sharper relief when viewed against section 2-1401(b-5)(5)'s requirement that "the new evidence of domestic violence against the movant is *** of such a conclusive character that it would likely change the sentence imposed by the original trial court." Taken all together and viewed in the light most favorable to Hiles-Sloan, the petition alleges that Sloan abused Hiles-Sloan, resulting in PTSD, depression, and anxiety, which Hiles-Sloan might have been suffering from prior to her incarceration in 2012. But absent allegations regarding how the abuse related to Hiles-Sloan's participation in the offense,

we fail to see—without further factual allegations—how any court could view her petition's allegations as having "such a conclusive character that it would likely change the sentence imposed by the original trial court."

¶ 33    In sum, we find that, as pleaded, Hiles-Sloan's petition did not adequately allege specific facts that, if true, would state a claim under section 2-1401(b-5).

¶ 34    Nevertheless, we reverse the circuit court's judgment dismissing the petition with prejudice because Hiles-Sloan's section 2-1401(b-5) claim was not so frivolous and wholly without merit to warrant a dismissal without leave to replead. As *Vincent* observed, "the trial court should allow a litigant the opportunity to amend the petition in those circumstances when doing so would yield a meritorious claim." *Vincent*, 226 Ill. 2d at 13 n.3. A *sua sponte* disposal of a section 2-1401 petition without a responsive pleading—whether it be treated as a judgment on the pleadings or a dismissal for failure to state a claim—"must be measured against our normal rules of civil practice and procedure." *Id.* at 14. Our supreme court has repeatedly observed that a "[a] complaint should be dismissed with prejudice under section 2-615 only if it clearly apparent that no set of facts can be proven that will entitle the plaintiff to recover." *Cowper v. Nyberg*, 2015 IL 117811, ¶ 22 (citing *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 488 (1994)).

¶ 35    The circuit court should have struck the petition and given Hiles-Sloan an opportunity to replead her claim because it is not clear that she is unable to state a claim under section 2-1401(b-5). While the facts she does allege are not enough to state a claim, her factual allegations suggest that there may be facts that she might plead that could satisfy section 2-1401(b-5)'s requirements. Through amendment, Hiles-Sloan could plausibly allege additional, specific facts demonstrating a relationship between Sloan's physical and emotional abuse, her PTSD, depression, and anxiety disorder, and her participation in Shavon's murder, such as allegations about the abuse she suffered

13

in the lead-up to Shavon's murder and the effects of that abuse on her mental health and her own conduct, which allegations could plausibly be supported by materials pertaining to her PTSD, depression, and anxiety disorder diagnoses. Furthermore, she plausibly could amend her petition to include specific facts about her participation in Shavon's murder, since her petition, as pleaded, says virtually nothing about her actual participation in the offense. We therefore reverse the circuit court's judgment dismissing the petition with prejudice and remand with instructions that Hiles-Sloan be given the opportunity to amend her petition.

¶ 36    Finally, the circuit court dismissed Hiles-Sloan's petition without addressing her motion for appointment of counsel. On remand, the circuit court is instructed to appoint counsel for Hiles-Sloan. Nothing in this order should be construed to limit the State's response to any amended petition filed by Hiles-Sloan.

¶ 37                                    IV. CONCLUSION

¶ 38    For the foregoing reasons, we find that Hiles-Sloan's section 2-1401(b-5) petition was factually insufficient, but the circuit court should have provided an opportunity to file an amended petition. We reverse the circuit court's judgment dismissing the 2-1401(b-5) petition and remand with instructions to appoint counsel for Hiles-Sloan and allow her an opportunity to replead.

¶ 39    Reversed and remanded with instructions.