**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230300-U

Order filed June 24, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| EBY-BROWN COMPANY, LLC, a Delaware Limited Liability Company, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| IYS VENTURES, LLC, an Illinois Limited Liability Company, IMART STORES, LLC, a Minnesota Limited Liability Company, MUWAFAK S. RIZEK, and ISAM SAMARA, | ) ) ) ) ) ) | Appeal No. 3-23-0300 Circuit No. 22-LA-217 |
| Defendants | ) ) | |
| (IMart Stores, LLC, and Isam Samara, Defendants-Appellants). | ) ) ) | The Honorable David E. Schwartz, Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice McDade and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   In an appeal in a civil case for breach of contract and other related causes of action pertaining to defendants' alleged failure to pay for convenience store products that they had purchased wholesale from plaintiff to resell in their gas stations and convenience stores, the appellate court found that the sole remaining defendant on appeal failed to present a sufficient record to support his claims of

error relating to the trial court's entry of an order of default and a default judgment against him and its denial of his petition to vacate the order of default. The appellate court also found that the sole remaining defendant forfeited all but one of his claims of error on appeal as to the default judgment amount by failing to make those claims in the trial court and that the default judgment amount was properly entered. The appellate court, therefore, affirmed the trial court's judgment.

¶ 2        Plaintiff, Eby-Brown Company, LLC, filed a civil lawsuit against defendants, IYS Ventures, LLC (IYS), IMart Stores, LLC (IMart), Muwafak S. Rizek, and Isam Samara, for breach of contract and other related causes of action pertaining to defendants' alleged failure to pay for convenience store products that they had purchased wholesale from plaintiff to resell in their gas stations and convenience stores. During pretrial proceedings, the trial court entered an order of default (default order) and a default judgment against defendants for repeatedly failing to comply with the trial court's orders, including the trial court's discovery orders. Defendants filed a petition to vacate, which the trial court denied as to the default order but granted as to the default judgment. A second prove-up hearing was conducted, and the trial court entered a new default judgment against the two defendants that had not filed for bankruptcy protection, IMart and Samara. IMart and Samara appealed. After the appeal was filed, however, IMart filed for bankruptcy protection as well and was subsequently dissolved as a limited liability company by the federal bankruptcy court. For the reasons that follow, we affirm the trial court's judgment as to the sole remaining defendant on appeal, Samara.

¶ 3                                    I. BACKGROUND

¶ 4        Plaintiff was a wholesale distributor of convenience store products. Defendants, IYS and IMart, were limited liability companies that owned and operated gas stations and convenience stores in multiple states, including Illinois. Defendants, Rizek and Samara, were business partners and the owners/members of IYS and IMart.

2

¶ 5        In December 2018, IMart entered into a credit and security agreement with plaintiff so that IMart could obtain products from plaintiff on credit to resell in IMart's gas stations and convenience stores. The agreement was signed by Rizek and Samara on behalf of IMart and provided, among other things, that (1) plaintiff would provide products to IMart on credit pursuant to the terms of the agreement; (2) IMart would pay for those products within 14 days of delivery; (3) IMart's liabilities under the agreement would include the liabilities of any other customer of plaintiff in which IMart, Rizek, or Samara had an ownership interest; (4) if IMart's account became past due, interest would accrue on any unpaid balances at a rate of 12% per year, compounded monthly; and (5) if IMart defaulted on the agreement, it agreed to pay all reasonable costs and expenses, including attorney fees and court costs, that plaintiff incurred in enforcing the agreement and collecting the amount due. IYS entered into a similar credit and security agreement with plaintiff in July 2020. That agreement was signed by Rizek on behalf of IYS. In addition to signing the credit agreements on behalf of IMart and IYS, Samara and Rizek also each signed a personal guaranty individually ensuring all payments owed to plaintiff by IMart (Samara's personal guaranty) and IYS (Rizek's personal guaranty).

¶ 6        Over the course of several months, IMart and IYS, at the direction of Samara and Rizek, ordered, accepted, and received millions of dollars in products from plaintiff for resale in IMart's and IYS's gas stations and convenience stores. At some point during that time period, however, IMart and IYS fell behind in their payments to plaintiff. In October, November, and December 2021, IMart and/or IYS issued over $800,000 in payments to plaintiff through checks and electronic fund transfers that were later returned by the banks because of insufficient funds or because the checks were deemed to be altered or fictitious. Although plaintiff initially continued to ship products to IMart and IYS in reliance upon defendants' repeated promises to pay for the

3

products received, it eventually became concerned and stopped all shipments. In February 2022, plaintiff notified defendants by letter that they were in default on the credit agreements (and the personal guarantees) because of their continued failure to pay the amount that was due. IMart and IYS's unpaid balance at that time was over $6 million.

¶ 7        In March 2022, plaintiff filed the instant civil lawsuit against defendants. Plaintiff's complaint contained seven counts, including claims for breach of contracts (the credit and security agreements), personal guarantees, account stated, unjust enrichment, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2018)). Plaintiff attached to its complaint copies of the credit and security agreements and the personal guarantees that defendants had signed.

¶ 8        Later that same month (March 2022), plaintiff filed a motion to appoint a receiver over defendants' businesses and to have the trial court take certain measures to preserve defendants' assets for plaintiff's later possible recovery. Defendants opposed the motion and, according to plaintiff, engaged in actions to delay the trial court proceedings. Near the end of June 2022, defendants filed an answer to plaintiff's complaint and admitted many of the underlying facts that plaintiff had alleged.

¶ 9        In July 2022, a hearing was held on plaintiff's motion to appoint receiver. At the conclusion of the hearing, the trial court denied plaintiff's request for a receiver; granted plaintiff's request to freeze defendants' assets and to be allowed to retrieve its property from defendants' possession; and directed defendants to provide plaintiff with a list of all real estate that defendants owned, including the names and addresses of the titleholders, by the end of August 2022. The written order specifically provided that "[d]efendants [were] enjoined from directly or indirectly transferring and/or disposing of any assets until further order of court."

¶ 10      During that same time period and thereafter, plaintiff tried to obtain discovery from defendants but was unsuccessful. In June 2022, plaintiff issued document requests to defendants, but defendants failed to produce most of the documents that plaintiff had requested and, instead, made five boxes of documents, without production numbers, available to plaintiff for inspection. The boxes, however, were stuffed with irrelevant documents, along with invoices and other shipping information for plaintiff's products. Many of the documents that plaintiff had requested, such as bank statements and tax records, were not turned over to plaintiff or produced for inspection. In June and July 2022, plaintiff served defendants with interrogatories, but none of the defendants responded. Due to defendants' failure to comply with discovery, plaintiff's attorney requested and received an Illinois Supreme Court Rule 201(k) (eff. July 30, 2014) discovery conference with defendants' attorney in July 2022 (prior to the date of the July 2022 trial court order). The parties reached an agreement during that conference to try to get defendants' discovery responses on track, but defendants again failed to comply. Despite repeated letters from plaintiff's attorney to defendants' attorney, defendants failed to produce documents, respond to interrogatories, or to provide plaintiff with a list of the real estate that defendants owned as directed by the trial court in the July 2022 court order.

¶ 11      In September 2022, plaintiff filed a motion to compel discovery and attached to the motion various supporting documents that showed in detail the efforts that plaintiff had taken to try to obtain discovery compliance from defendants. Plaintiff also filed a motion seeking leave from the trial court to issue subpoenas to out-of-state banks where defendants' accounts were potentially located. On the presentment date of plaintiff's two motions, the trial court set the case for a hearing to take place the following month and gave defendants until a date shortly before

the hearing to respond to all outstanding discovery requests and pending motions. Defendants again failed to comply.

¶ 12    In October 2022, on the hearing date, the trial court granted plaintiff's motion to compel and ordered defendants, by a certain specified date in November 2022, to answer all outstanding interrogatories, to provide plaintiff with a certified list of real estate, and to return plaintiff's property. The trial court also ordered defendants to produce all responsive documents to plaintiff by a specified date in December 2022 and granted plaintiff's request for leave to issue subpoenas to out-of-state banks. Defendants again failed to comply with the trial court's ruling.

¶ 13    In November 2022, plaintiff served defendants with deposition notices. The depositions were supposed to take place the following month (December 2022), but defendants failed to appear for the scheduled depositions and failed to notify plaintiff that they would not appear. At or around that same time period, plaintiff began receiving financial information from the out-of-state banks it had subpoenaed and from in-state banks as well. The subpoenaed information showed that despite the trial court's July 2022 order freezing defendants' assets, defendants had transferred over $11 million out of their accounts through thousands of transactions.

¶ 14    In January 2023, because of defendants' failure to comply with plaintiff's discovery requests and the trial court's orders, plaintiff filed a motion for default judgment against defendants. On the date the motion was scheduled for presentment, the trial court granted the motion, entered a default order against all defendants, and set the case for a prove-up hearing on damages and sanctions to be held on a specified date in March 2023. The written order that was issued indicated that the default order had been entered because "defendants [had] failed to comply with numerous court orders."

6

¶ 15    Prior to the March 2023 prove-up hearing, defendants' attorney filed a motion to withdraw from the case and scheduled the motion for the same day as the prove-up hearing. The motion to withdraw did not request that the prove-up hearing be continued. In preparation for the prove-up hearing, plaintiff filed a detailed memorandum in support of the default judgment amount that it was seeking. On the hearing date, the trial court addressed the motion to withdraw first and granted the motion. The trial court then held a prove-up hearing and entered a final default judgment of approximately $7.3 million against all defendants, which included an award of the principal balance owed by defendants to plaintiff on the contracts and personal guarantees, interest on that balance, and attorney fees and costs. Although plaintiff had also requested an award of punitive damages under the Consumer Fraud Act as part of the default judgment, the trial court denied that request. Enforcement of the default judgment was stayed for 30 days.

¶ 16    In April 2023, a few days after the 30-day period had expired, defendants' new attorney filed an appearance and a motion to vacate (referred to hereinafter at times as the petition to vacate or the petition) the January 2023 default order and the March 2023 default judgment. The trial court and the parties treated the motion as a section 2-1401 petition (735 ILCS 5/2-1401 (West 2022)). A hearing was held on the petition the following month (May 2023). At the conclusion of the hearing, "[f]or the reasons stated on the record," the trial court denied defendants' request to vacate the January 2023 default order, finding in the written ruling that "the sanction of default for repeated failures to comply with court orders [was] appropriate." However, the trial court agreed with defendants—that they were entitled to counsel at the prove-up hearing—and granted defendants' request to vacate the March 2023 default judgment on that basis. The trial court, therefore, set the case for a second prove-up hearing to be held in May 2023.

¶ 17        Shortly before the second prove-up hearing, defendants Rizek and IYS filed for bankruptcy protection in federal bankruptcy court. The trial court was told about the bankruptcy filing at the prove-up hearing and, due to the automatic bankruptcy stay, proceeded with the prove-up hearing only as to defendants IMart and Samara. IMart and Samara were represented at the hearing by their attorney. Prior to the second prove-up hearing, plaintiff filed a detailed supplemental memorandum in further support of its request for punitive damages as part of the default judgment. The only objection that IMart and Samara's attorney made throughout the hearing was that the various amounts that plaintiff had sought to recover had not been allocated between each of the defendants. At the conclusion of the hearing, the trial court entered a final default judgment of approximately $7.9 million against IMart and Samara, which included an award of the principal balance owed by defendants to plaintiff on the contracts and personal guarantees, interest on that balance, attorney fees and costs, and punitive damages. The written order that was issued indicated that the trial court had awarded plaintiff $500,000 in punitive damages as part of the default judgement and had found that the award of punitive damages was "supported by the evidence of violations of the Illinois Consumer Fraud Act including but not limited to use of phony bank accounts, check kiting, and fake electronic payments." The written order also contained the trial court's finding, made pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason for delaying enforcement or appeal of the trial court's order.

¶ 18        IMart and Samara appealed. However, after the appeal was filed, IMart filed for bankruptcy protection in federal bankruptcy court as well. The bankruptcy court later dissolved IMart as a limited liability company, leaving Samara as the sole remaining defendant on appeal. See *People v. Mazzone*, 74 Ill. 2d 44, 48 (1978) (finding that an appeal abated where the

8

corporate appellant had been involuntarily dissolved after it had perfected its appeal but before the appellate court had issued a decision).

¶ 19                                      II. ANALYSIS

¶ 20                          A. The Trial Court's Denial of Defendants'
                         Section 2-1401 Petition to Vacate the Default Order

¶ 21        As his first point of contention on appeal, defendant argues that the trial court erred in denying defendants' petition to vacate the January 2023 default order. Defendant asserts that the petition should have been granted as to the default order (in addition to the March 2023 default judgment, which the trial court did grant) because (1) the trial court did not give defendants an opportunity to respond in writing to plaintiff's motion for default judgment before the default order was entered; (2) the default order was entered, even though plaintiff's motion for default judgment was only scheduled for presentment that day and not for hearing; (3) defendants were not given proper notice of plaintiff's motion for default; (4) the trial court did not give defendants an opportunity to contest the entry of a default order by either rectifying any discovery violations or by explaining how defendants' discovery responses were sufficient; (5) defendants had actually already responded to plaintiff's discovery requests prior to the default order being entered; and (6) to the extent that the default order was entered against defendants as a discovery sanction, such a remedy was improper because plaintiff failed to comply with Supreme Court Rule 201(k) and failed to present any proof to the trial court that plaintiff had complied with Rule 201(k). For all of the reasons stated, therefore, defendant asks that we reverse the trial court's ruling and, we presume, that we vacate the January 2023 default order (and the May 2023 default judgment) and remand this case for further proceedings in the trial court.

9

¶ 22      Plaintiff argues that the trial court's denial of defendants' petition to vacate the January 2023 default order was proper and should be upheld. In support of that argument, plaintiff asserts first that defendant has failed to present a sufficient record on appeal to establish his claim of error as to this issue because defendant failed to submit any of the transcripts from the trial court proceedings, including the transcript from when the trial court denied defendants' petition to vacate the default order and the transcript from when the trial court initially entered the default order. Thus, plaintiff contends that this court must presume that the trial court's ruling was correct and in conformance with the law. Second, and in the alternative, plaintiff asserts that even if defendant presented a sufficient record on appeal for review of this issue, the trial court's ruling denying the petition to vacate the default order should still be upheld because defendants failed to establish in the trial court the elements required for section 2-1401 relief, such as a meritorious defense to plaintiff's underlying complaint and the entry of the default order and due diligence in asserting that defense and in bringing the 2-1401 petition. In addition, as for defendant's claim that plaintiff failed to comply with Rule 201(k), plaintiff asserts that (1) the record shows that plaintiff made efforts to meet and confer with defendants prior to filing the motion to compel discovery; (2) any alleged deficiency by plaintiff regarding plaintiff's compliance with Rule 201(k) was resolved by the trial court granting plaintiff's motion to compel discovery; and (3) this case was long past the point of plaintiff's Rule 201(k) compliance in the trial court when the default order was entered since the default order was entered because of defendants' repeated failure to comply with the trial court's orders. For all of the reasons set forth, plaintiff asks that we affirm the trial court's denial of defendants' section 2-1401 petition to vacate the January 2023 default order.

¶ 23     To be entitled to relief on a fact-dependent section 2-1401 petition, the petitioner must set forth specific factual allegations in support of each of the following elements (1) the existence of a meritorious defense; (2) due diligence in presenting that defense to the trial court in the original underlying action; and (3) due diligence in filing the section 2-1401 petition. *Warren County Soil & Conservation District v. Walters*, 2015 IL 117783, ¶ 51. In resolving such a petition, the trial court must consider the particular facts, circumstances, and equities of the underlying case. *Id.* ¶ 50. A trial court's ruling on a fact-dependent section 2-1401 petition will not be reversed on appeal, absent an abuse of discretion. *Id.* ¶ 51. The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 24     It is well established that an appellant has the burden on appeal to present a sufficiently complete record of the proceedings in the trial court to support the appellant's claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, the appellate court will presume that the order entered by the trial court was in conformity with law and had a sufficient factual basis. *Id.* at 392. Any doubts that arise from the incompleteness of the record must be resolved against the appellant. *Id.*

¶ 25     In the present case, although defendant challenged the trial court's denial of defendants' petition to vacate the default order, defendant presented none of the transcripts (or bystander's reports or agreed statements of facts) from the trial court proceedings that pertained to that issue. Defendant did not present the transcript of the trial court proceeding during which defendants' section 2-1401 petition was denied as to the default order or the transcript from when the default

11

order was initially entered. When defendant was given an opportunity to address that failing in his reply brief on appeal, he merely stated that he provided the parts of the record that were relevant to the issues raised and that he was not required to include any of the transcripts. Based upon defendant's failure to provide a sufficiently complete record for review of this issue, we must presume that the trial court's ruling denying defendants' section 2-1401 petition to vacate the January 2023 default order was in conformity with the law and had a sufficient factual basis. See *id.* We, therefore, reject defendant's assertions to the contrary.

¶ 26                               B. The Trial Court's Entry of the
                        May 2024 Default Judgment Against Defendant

¶ 27        As his second point of contention on appeal, defendant argues that the trial court erred in determining the amount of the May 2023 default judgment it entered against defendant. Defendant asserts that the trial court's ruling was erroneous because the trial court awarded plaintiff (1) attorney fees without requiring plaintiff to file a fee petition that detailed the attorney fees sought and showed that the attorney fees were reasonable and without holding a separate hearing on the matter; (2) interest on the balance owed with an interest rate that violated Illinois law; (3) court costs that were clearly inflated and that included expenses that were the result of plaintiff's own fault (the scheduled depositions that defendants did not attend and, according to defendants, that plaintiff failed to confirm); (4) punitive damages under the Consumer Fraud Act, even though the Consumer Fraud Act did not apply in this case, plaintiff did not make sufficient specific allegations to establish fraud, and the trial court did not award punitive damages to plaintiff in the prior default judgment that was entered in March 2023 and later vacated; and (5) a total judgment amount that the trial court made joint and several against all defendants, even though the contracts in this case were separate and distinct, not all of the defendants were parties to all of the contracts. Further, that each defendant did not guarantee the performance of every

12

other defendant, plaintiff did not show how the breaches of those separate contracts with separate defendants could result in joint and several liability for all defendants, some of the defendants had filed for bankruptcy protection prior to the trial court's ruling, and some of the breaches were clearly the sole responsibility of those defendants that had filed for bankruptcy protection. Thus, for all of the reasons stated, defendant asks that we reverse the trial court's ruling and, again we presume, that we vacate the May 2023 default judgment and remand this case for further proceedings.

¶ 28　　　　Plaintiff argues that the trial court's ruling was proper and should be upheld. As with the previous issue, plaintiff again asserts first in support of its argument that defendant has failed to present a sufficient record to establish defendant's claim of error on appeal as to this issue because defendant failed to submit the transcripts from the trial court proceedings when the initial (March 2023) or subsequent (May 2023) default judgments were entered. Thus, plaintiff again maintains that this court must presume that the trial court's May 2023 default judgment amount was correct and in conformance with the law. Second, and in the alternative, plaintiff asserts that even if defendant presented a sufficient record on appeal for review of this issue, most of the assertions made by defendant on this issue are forfeited because defendant failed to make those assertions in the trial court. According to plaintiff, the only assertion not forfeited in this appeal is whether the trial court erred by not apportioning the various components of the default judgment against each of the defendants—the only objection that defendant made in the trial court when the May 2023 default judgment was entered. As to that assertion, plaintiff contends that the trial court's ruling was amply supported by the evidence in the record, which showed that each defendant was jointly and severally liable for the entire amount of the default

13

judgment. Thus, for all of the reasons set forth, plaintiff asks that we affirm the amount of the default judgment entered by the trial court against this particular defendant.

¶ 29    The default judgment amount in this case was entered primarily as the result of a discovery sanction imposed by the trial court. The imposition of a discovery sanction is a matter that is within the sound discretion of the trial court and will not be reversed on appeal unless the trial court has committed an abuse of discretion. *Koppel v. Michael*, 374 Ill. App. 3d 998, 1004 (2007). As noted above, the threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum*, 235 Ill. 2d at 36; *Leona W.*, 228 Ill. 2d at 460.

¶ 30    In the present case, after reviewing the record presented by defendant on appeal, we cannot find that the trial court erred in the amount of the default judgment it entered against defendant. As with the prior issue, defendant failed to present any of the transcripts (or bystander's reports or agreed statements of facts) from the relevant proceedings to support his claims of error as to the judgment amount. Defendant did not present the transcript from the initial proceeding when the first default judgment was entered in March 2023, the transcript from when that default judgment was vacated, or the transcript from when the second default judgment was entered in May 2023. We must, therefore, presume that the trial court's ruling as to the judgment amount was in conformity with the law and had a sufficient factual basis and resolve any doubts that arise from the incompleteness of the record against defendant as the appellant in this case. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 31    Even if we were to consider, to defendant's benefit, the transcript of the May 2023 proceeding that plaintiff submitted in support of some of plaintiff's own arguments on appeal,

14

we would still have to find that the judgment amount entered by the trial court was appropriate in this case. As plaintiff correctly notes, defendant forfeited all of the assertions that defendant makes in this appeal as to the specific amount awarded for attorney fees and court costs, interest on the balance owed, and punitive damages because defendant did not make any of those assertions in the trial court when the May 2023 default judgment was entered.[1] See *Roy Zenere Trucking & Excavating, Inc. v. Build Tech, Inc.*, 2016 IL App (3d) 140946, ¶ 36 (recognizing that an issue not raised in the trial court is forfeited and may not be raised for the first time on appeal).

¶ 32    Defendant's only assertion that has not been forfeited on appeal is his assertion that the trial court erred by not allocating the judgment amount between each of the defendants. That assertion, however, lacks merit because the trial court was provided with ample legal and factual support to justify making the total judgment amount joint and several as to all of the defendants (or, at least as to all of the defendants that had not filed for bankruptcy protection). Plaintiff alleged in its complaint that the credit agreements between IMart and IYS made IMart and IYS liable for any debts that plaintiff was also owed by IMart, IYS, Samara, or Rizek. Copies of the credit agreements were attached to plaintiff's complaint to further support plaintiff's allegations in that regard. Plaintiff also alleged in its complaint that Samara and Rizek had signed personal guarantees in connection with the credit agreements and had individually guaranteed the amounts that IMart and IYS owed to plaintiff. As with the credit agreements, copies of the personal guarantees were attached to plaintiff's complaint to further support plaintiff's allegations. In addition, defendants conceded in their joint answer that they had signed the credit agreements

---

[1]Although defendant used the term "plain error" at various times in both his initial and reply briefs on appeal, he did not use that term in the context of forfeiture or argue that any potential forfeiture of his assertions on appeal should be ignored by this court on the basis of plain error.

and the personal guarantees, and plaintiff's allegations as to those matters were deemed admitted by defendants when the default order was entered. See *In re Estate of Soderholm*, 127 Ill. App. 3d 871, 882 (1984) (recognizing that the effect of a default judgment was that all well-pled allegations in the complaint against the party in default were deemed to be admitted). Based upon the record before us, therefore, we find that the trial court did not commit an abuse of discretion in the amount of the default judgment that it entered and in making this particular defendant liable for the entire default judgment amount through joint and several liability.

¶ 33                                    III. CONCLUSION

¶ 34        For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 35        Affirmed.